United States Court of Appeals,

Fifth Circuit.

No. 93-4234

Summary Calendar.

METRO COUNTY TITLE, INC., d/b/a Safeco Land Title of Tarrant County, Petitioner,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.

Feb. 10, 1994.

Petition for Review of Final Order of the Federal Deposit Insurance Corporation.

Before POLITZ, Chief Judge, KING and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Metro County Title, Inc. d/b/a Safeco Land Title of Tarrant County ("Safeco") seeks review of the FDIC's partial denial of deposit insurance coverage for cashier's checks purchased with funds from Safeco's escrow accounts. We deny review.

*Background*

Safeco entered into an agreement with First City Bank—Dallas which provided that if failure of the bank appeared imminent First City would issue cashier's checks to Safeco to bring the balances in Safeco's escrow accounts below the FDIC's $100,000 deposit insurance limit. On Thursday, October 30, 1992, a First City officer determined that insolvency was near and issued to Safeco three cashier's checks totaling more than $1.44 million.[1] That same day the Texas State Banking Commission declared First City insolvent and closed it. The checks were delivered to Safeco the following Monday.

Safeco met with FDIC claims agents and attorneys a few days later to discuss insurance

---

[1] Each check was purchased with funds from one of Safeco's three escrow accounts. The first check was in the amount of $419,779.47 leaving a balance of $33,691.38 in that account. The second check was in the amount of $309,112.31 leaving a balance of $63,012.97. The third check was in the amount of $712,464.34 leaving a balance of $9,178.70. Each check listed "Safeco Land Title of Tarrant" as both remitter and payee. The checks did not indicate that they represented escrowed funds.

coverage for the three cashier's checks. At this meeting Safeco insisted that the checks should be treated as if the funds remained in the escrow accounts.[2] The FDIC determined however, that the three checks did not reflect the fiduciary capacity in which Safeco purportedly held the funds. On the face of each check the sole party in interest was Safeco Land Title of Tarrant. As a result the FDIC concluded that the checks constituted a single $1.44 million deposit owned by Safeco individually, and it declared this entire deposit eligible for one $100,000 payment.

Safeco sought review of this decision in an appeal to the FDIC, maintaining that First City's issuance of the cashier's checks was unauthorized and that because the funds for the checks came from escrow accounts the sums should be returned to those accounts and insured as if the checks had never been drawn. The FDIC Committee for Secondary Review of Insurance Claims affirmed the initial decision, treating the checks as a single aggregated deposit entitled to one insurance limit. To date the FDIC has authorized payment of the insured $100,000 together with dividend checks for 907 of the balance. The instant dispute involves the sum of $134,135.

*Analysis*

Safeco presents three issues for review,[3] first maintaining that the cashier's checks should have been treated as escrow funds eligible for additional coverage. In holding to the contrary, Safeco maintains, the FDIC misinterpreted its own regulations and the Federal Deposit Insurance Act and, in addition, failed to consider relevant evidence. Second, Safeco argues that it did not authorize the cashier's checks and that the FDIC failed to consider that fact. Finally, Safeco contends that the informal procedure the FDIC followed did not comport with due process.

We review FDIC deposit insurance det erminations with deference, rejecting them only if found to be arbitrary, capricious, the result of an abuse of discretion, or otherwise not in accordance

---

[2]Safeco sought this treatment so that each escrow account would be eligible for the $100,000 protection. *See* 12 C.F.R. § 330.3(a).

[3]We have jurisdiction to review final FDIC deposit insurance determinations where, as in the instant case, the depository institution in question is located within our circuit. 12 U.S.C. § 1821(f)(4). *See also Nimon v. Resolution Trust Corp.,* 975 F.2d 240 (5th Cir.1992).

with the law.[4]  The FDIC is accorded special deference in the interpretation of its own regulations and the statutes it enforces.[5]  With respect to Safeco's separate due process challenge, we review the procedure afforded independently,[6] examining the record in light of *Mathews v. Eldridge.*[7]

A. *Escrow Treatment*

The three checks were treated by the FDIC as a single deposit owned by Safeco, a result based on the specifics of the face of each check.  Safeco would have us ignore the existence of the cashier's checks, examine the records of the escrow accounts on which they were drawn, and then relieve Safeco of the burden of its aborted effort to orchestrate a circumvention of the FDIC's coverage limits.  This we cannot do.

The general rule regarding treatment of deposits[8] is found in 12 C.F.R. § 330.4:  "[T]he FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution."  First City's records reflect that the accounts on which the checks were drawn were escrow accounts.  Safeco errs in its assumption that this general rule makes the underlying escrow account records dispositive of ownership of the checks after issuance. As the FDIC notes, under its doctrine of "conclusive account records," when First City was closed the checks had been drawn and were no longer part of Safeco's escrow accounts.[9]  The FDIC maintains that the only relevant inquiry is ownership of the cashier's checks, each of which serves as its own complete account record.  Thus focused, the account records when First City was closed reflect that Safeco held a total of $105,000 in the three escrow accounts and individually owned three

---

[4]*Palermo v. FDIC,* 981 F.2d 843 (5th Cir.1993);  *Louisiana ex rel. Guste v. Verity,* 853 F.2d 322, 327 (5th Cir.1988) (administrative decision satisfies arbitrary or capricious standard of review if agency "articulates a rational relationship between the facts found and the choice made" and if it "gave at least minimal consideration to relevant facts contained in the record").

[5]*Nimon.*

[6]*Porter v. Califano,* 592 F.2d 770 (5th Cir.1979).

[7]424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

[8]Both the remaining account balances and the unpaid cashier's checks are considered deposits for purposes of FDIC deposit insurance coverage.  12 U.S.C. § 1813(*l*).

[9]*See also Nimon;  FDIC v. McKnight,* 769 F.2d 658 (10th Cir.1985).

cashier's checks totaling $1.44 million.[10]

Contrary to Safeco's assertions, FDIC regulations do not expressly require the tracing of ownership interests from the face of a cashier's check back to the account whose funds were used for the purchase. Indeed, absent express notation on the checks that they represented escrowed funds, the name, ownership interest, and payee on the face of each check is controlling for purposes of deposit insurance.[11] That interest herein is Safeco Land Title of Tarrant.

Safeco next urges Texas state law presumptions to the effect that funds in trust have been used lawfully, which would support the conclusion that Safeco held the checks in the custodial capacity reflected in the underlying accounts. These state law presumptions do not displace the federal conclusive account records doctrine because, as 12 C.F.R. § 330.3(h) explains, "ownership under state law is not sufficient for, or decisive in, determining deposit insurance."

Finally, relying on the general administrative law requirement that agencies consider all relevant evidence together with regulations requiring the FDIC to use account records in its deposit insurance determinations, Safeco argues that the FDIC's ruling was arbitrary and capricious because it failed to consider the underlying account records. We are not persuaded. An agency need only consider relevant evidence;[12] the FDIC's reasonable interpretation of its own regulations makes the face of a cashier's check the only relevant record for determining its ownership. Few provisions encourage the FDIC to investigate extraneous records and none cited support Safeco's position.[13]

Given the arbitrary and capricious standard of review and our deference to agency

---

[10]Ironically, had Safeco not attempted this withdrawal, the escrow accounts likely would have been better insured. *See* 12 U.S.C. § 1821(a)(1)(B), (C) (funds held in different capacities are not aggregated for purposes of insurance; accounts held in trust will often be insured up to $100,000 per account, not $100,000 per depositor).

[11]12 C.F.R. § 330.4(b)(1). Safeco's suggestion that it need not comply with the FDIC's recordkeeping requirements is incorrect. While 12 C.F.R. § 330.4(b)(4) exempts negotiated instruments from strict recordkeeping requirements, by its express language the section does not apply to cashier's checks received directly from the depository institution.

[12]*Louisiana ex rel. Guste.*

[13]For example, the exception found in 12 C.F.R. § 330.4(a) only encourages further inquiry in cases where it appears the FDIC is being defrauded into giving unwarranted additional coverage. This provision actually militates against Safeco's position.

interpretations, we accept the FDIC's conclusive account records doctrine and resultant treatment of the cashier's checks as Safeco deposits.

B. *Authorization*

Safeco contends that the FDIC arbitrarily and capriciously refused to consider evidence that it did not authorize the issuance of the checks.[14] This argument is meritless. Safeco initiated the account-emptying scheme.[15] Further investigation was unnecessary. The FDIC had a sound basis for concluding that Safeco authorized the checks.[16]

C. *Due Process*

Finally, Safeco asserts that it was not afforded due process. Its primary complaint is that it was given no opportunity to present the details of ownership in the underlying escrow accounts. As above concluded, those records were irrelevant to the ownership of the cashier's checks for deposit insurance purposes. Additionally, Safeco complains about the informality of the FDIC procedures. Trial-type procedures are not mandated for administrative decisionmaking. Safeco received a hearing, albeit informal, as well as a formal administrative appeal.

We assess the adequacy of the process guided by a *Mathews v. Eldridge* balancing which requires the weighing of the private interests affected by the official action, the risk of erroneous deprivation through the existing procedure, and the government's interest in minimizing its

---

[14]The FDIC investigated the authorization issue, contacting the First City bank officer who issued the checks. An FDIC memorandum indicates that the officer may have issued the checks without the consent of Safeco. The bank official later explained, however, that he had an understanding with Safeco that if the bank was going to fail he would issue checks to bring the escrow accounts below the insurance limit.

[15]In a letter to Congressman Pete Geren Safeco advised that "prior to the close of business on October 30," it had "requested that the bank issue us four cashier's checks totaling in excess of 1.7 million dollars."

[16]*Cf. Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 136-37 n. 23 (5th Cir.) (same), *cert. denied,* --- U.S. ----, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992).

administrative and financial burdens.[17]

The decisive *Mathews* question is whether the challenged procedures created a real risk of erroneous deprivation and whether additional procedures would have reduced that risk. The FDIC's abbreviated process, according to Safeco, precluded adequate consideration of ownership details about the underlying escrow accounts. Safeco was afforded an adequate opportunity to offer information relevant to the FDIC's determination. There was no due process violation.

The petition for review is DENIED.

---

[17]424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The private interests involved here include those of Safeco and its escrow depositors as well as the countervailing interests of other depositors whose insurance or dividend payments might be delayed by a rule requiring additional investigation and procedures. The government has a compelling interest in being able to rely with confidence on account records at the time of closure.