United States Court of Appeals,

Fifth Circuit.

No. 94-20165.

Summary Calendar.

DeCELL & ASSOCIATES, Plaintiff-Appellant,

v.

 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Guaranty
Bank, et al., Defendants,

 Federal Deposit Insurance Corporation, as Receiver for Guaranty
Bank, Defendant-Appellee.

Nov. 1, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before KING, JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:

Appellant DeCell & Associates ("DeCell") appeals from the
district court's dismissal of its claims against the Federal
Deposit Insurance Corporation ("FDIC"), in both its receivership
and corporate capacities, for lack of subject matter jurisdiction.
We affirm the judgment of the district court.

I. BACKGROUND

DeCell is a company engaged in the business of buying and
selling oilfield drill pipe and related products.  In April 1986,
JRL International and Associates, Inc. ("JRL") ordered drill collar
bits from DeCell, instructing DeCell to ship the bits to a Mexican
company, Perforaciones Marinas Del Golfo, S.A. ("Permargo").
Before it would sell to JRL, DeCell required a letter of credit;
consequently, Guaranty Bank ("Guaranty") issued a $250,000

irrevocable letter of credit on the account of Permargo and in favor of JRL.  JRL allegedly transferred the letter of credit to assignee DeCell, and upon receipt of the letter of credit, DeCell shipped the drill collar bits to Permargo.

On June 9, 1986, DeCell presented the letter of credit to Guaranty for payment, but Guaranty refused to honor it.  On August 13, 1986, DeCell filed suit in state court against Guaranty and JRL for the alleged wrongful dishonor of the letter of credit.  While the case was pending in state court, Guaranty failed, and the Banking Commissioner of Texas appointed the FDIC as Receiver ("FDIC-Receiver") on June 3, 1988.  FDIC-Receiver intervened as defendant in place of Guaranty, and removed the case to federal district court pursuant to 12 U.S.C. § 1819(b)(2)(B).[1]

In its amended answer, FDIC-Receiver raised two affirmative defenses that were uniquely applicable to the agency.  First, FDIC-Receiver asserted that the federal court lacked jurisdiction to determine whether the letter of credit was an "insured deposit."[2]

---

[1]The statute provides in relevant part:

> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

12 U.S.C. § 1819(b)(2)(B).

[2]DeCell claimed that its letter of credit was an insured deposit, and as a consequence, DeCell asserted that it could recover $100,000 of deposit insurance rather than a simple pro rata share of the receivership estate.

2

Second, FDIC-Receiver argued that DeCell had failed to sue the correct party—the FDIC in its corporate capacity ("FDIC-Corporate")—which alone is authorized under 12 U.S.C. § 1821(f)(1)[3] to pay insured deposits upon the closing of an insured depository institution. On February 7, 1992, DeCell and JRL filed a stipulation for entry of judgment against JRL in favor of DeCell; thus, only the remaining wrongful dishonor action against FDIC-Receiver (substituting for Guaranty) proceeded to a bench trial before a United States Magistrate.

Without issuing a judgment, the Magistrate *sua sponte* ordered a new trial because she determined that FDIC-Corporate was an indispensable party to DeCell's claim for deposit insurance. The Magistrate also ruled that the district court had subject matter jurisdiction to determine whether the letter of credit is an insured deposit. FDIC-Receiver filed a motion for reconsideration, urging that, by statute, no court has jurisdiction over the deposit insurance claim until DeCell files the claim with FDIC-Corporate and FDIC-Corporate makes a "final determination." It is undisputed that DeCell never filed such a claim with FDIC-Corporate.[4] The

---

[3]The statute provides in relevant part:

> In case of the liquidation of, or other closing or winding up of the affairs of, any insured depository institution, payment of the insured deposits in such institution shall be made by the Corporation as soon as possible.

12 U.S.C. § 1821(f)(1).

[4]DeCell admits in the "Statement of facts" portion of its brief that "DeCell did not file any proof of claim with FDIC at any time."

3

Magistrate denied the motion for reconsideration and set the case for a new trial.

FDIC-Receiver then filed a second supplemental motion for reconsideration, reiterating its jurisdictional challenges. FDIC-Corporate, having been added as a party by DeCell, moved to dismiss on the same jurisdictional grounds, and withdrew its consent to proceed before the Magistrate. The district court then ordered the parties to file cross-motions for summary judgment on the issues in the case.

In a January 4, 1994 order, the district court dismissed Decell's claims against both FDIC-Receiver and FDIC-Corporate for lack of jurisdiction. As the district court wrote:

> In carefully reviewing the entire record, the Court recognized that something went awry in the rulings in this dispute, perhaps because in its early stages the applicable law was new, untested, and, indeed, still developing. Nevertheless it is now clear to the Court that under the applicable law, cited by the FDIC in both its receivership and corporate capacities, that [sic] DeCell is required to file a claim with the federal agency and that this Court has no jurisdiction to consider the dispute.

DeCell appeals from this ruling.

## II. STANDARD OF REVIEW

Subject matter jurisdiction is a question of law that we review on a *de novo* basis. *See Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994) (per curiam); *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1204 (5th Cir.1992). The question of federal court jurisdiction "may be raised by parties, or by the court *sua sponte,* at any time." *MCG, Inc. v. Great W. Energy Corp.,* 896 F.2d 170, 173 (5th Cir.1990).

4

## III. ANALYSIS AND DISCUSSION

Many of DeCell's contentions can be resolved merely by examining the deposit insurance system and our holdings in the area. Because this case hinges on our interpretation of the statutory provisions, a thorough description of the statutory scheme is necessary. DeCell's arguments will then be discussed in turn.

## A. The Exhaustion Requirement

Federal statutes govern the process by which the FDIC designates claims entitled to federal deposit insurance. *See* 12 U.S.C. § 1821(f). This "designation" responsibility is statutorily given to FDIC-Corporate, as that entity is charged with insuring the deposits of banking institutions and processing the insurance claims of failed banks. *See* 12 U.S.C. § 1821(a), (f). The relevant sections on the payment of insured deposits provide:

(f) Payment of insured deposits

. . . . .

(2) Proof of claims

The Corporation, in its discretion, may require proof of claims to be filed and may approve or reject such claims for insured deposits.

(3) Resolution of disputes

(A) Resolutions in accordance to corporation regulations

In the case of any disputed claim relating to any insured deposit or any determination of insurance coverage with respect to any deposit, the Corporation may resolve such disputed claim in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims.

5

(B) Adjudication of claims

If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims, the Corporation may require the final determination of a court of competent jurisdiction before paying any such claim.

(4) Review of corporation's determination

Final determination made by the Corporation shall be reviewable in accordance with chapter 7 of Title 5 by the United States Court of Appeals for the District of Columbia or the court of appeals for the Federal judicial circuit where the principal place of business of the depository institution is located.

12 U.S.C. § 1821(f).

Based on this statutory scheme, the FDIC contends that a deposit insurance claim is not ripe for federal court review until the claim has been presented to FDIC-Corporate, and until FDIC-Corporate has made a "final determination." In contrast, DeCell emphasizes the tentative "may" language of sub-sections (2) and (3), asserting that "[t]here is nothing mandatory about the filing of claims or the approval or rejection of the claim[s] process."

DeCell's interpretation, however, has previously been rejected by this Court. In *Aztec General Agency v. Federal Deposit Insurance Corp.,* No. 93-1424, slip op. at 3 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion), plaintiff Aztec filed suit against a failed bank and FDIC-Corporate in state court for wrongful dishonor of a letter of credit. FDIC-Receiver substituted itself in place of the failed bank, and the lawsuit was removed to federal court. *See id.* On appeal, FDIC-Corporate argued that the district court lacked subject matter jurisdiction to hear disputes

6

concerning FDIC-Corporate's final determination of "insured deposit" status. *See id.* at 4.

This Court agreed with the position of the FDIC, concluding that the district court lacked jurisdiction over the insured deposit dispute. *See id.* at 6. As we explained:

> [W]e note that Aztec acknowledges that FDIC-Corporate has not made a final determination in this case. In fact, although Aztec wrote a letter to FDIC-Receiver seeking payment of the letter of credit, *Aztec never submitted a claim to FDIC-Corporate for payment of an insured deposit.* Because Aztec never sought payment of an insured deposit from FDIC-Corporate, it is not surprising that FDIC-Corporate never made a final determination denying payment. *Thus, without a final determination from FDIC-Corporate denying payment of the alleged insured deposit, this case is not, in any event, ripe for judicial review.*

*Id.* at 6-7 (footnote omitted) (emphasis added). Thus, just as we have found an exhaustion requirement in the § 1821(d) procedures for presenting creditors' claims to FDIC-Receiver, *see Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881-82 (5th Cir.1992) (stating that creditors of a failed institution must first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy), so too have we established an exhaustion requirement in the § 1821(f) procedures for presenting deposit insurance claims to FDIC-Corporate.

In the instant case, it is undisputed that DeCell has never presented its deposit insurance claim to FDIC-Corporate. As a consequence, there has been no opportunity for FDIC-Corporate to make a "final determination" regarding whether DeCell's letter of credit was an insured deposit. Thus, following from our decision in *Aztec,* DeCell's claims against FDIC-Receiver and FDIC-Corporate

7

are not ripe for judicial review, and the district court correctly dismissed the claims for lack of subject matter jurisdiction.

Even if FDIC-Corporate had made a "final determination," we nevertheless would affirm the district court's dismissal for lack of jurisdiction. Our cases have repeatedly held that under § 1821(f)(4), an appeal of FDIC-Corporate's "final determination" concerning payment of insured deposits can only be made to the appropriate circuit court of appeals. *See Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 7 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion); *Kershaw v. Resolution Trust Corp.,* 987 F.2d 1206, 1208 (5th Cir.1993) (per curiam); *Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 243-44 (5th Cir.1992) ("Congress used plain language in 12 U.S.C. § 1821(f)(4) which specifies that the courts of appeal will be the fora of these [deposit insurance coverage] reviews."). Thus, even if we assume that DeCell did present its claim to FDIC-Corporate and that FDIC-Corporate had made a "final determination," the district court still lacked jurisdiction under the plain language of § 1821(f)(4) and the mandate of our prior opinions.

### B. Waiver of the Exhaustion Requirement

DeCell begins its brief by suggesting, through a number of arguments, that FDIC-Corporate waived its right to rely upon DeCell's failure to file a deposit insurance claim. To support this contention, DeCell argues that the FDIC, in both its corporate and receivership capacities, has been involved in the case since FDIC-Receiver's intervention. DeCell seems to assert that because

8

FDIC-Receiver intervened in the state court lawsuit without expressly limiting its appearance to that of Receiver, the FDIC waived its right to claim that FDIC-Corporate was not presented with, and was unaware of, the deposit insurance claim.[5] As Decell itself summarized:

> Because of FDIC's knowledge of the state court suit, and because of its participation in the case for 22 months without a Rule 12 motion, plea in abatement, answer alleging estoppel for failure to participate in the claims process or other indication that DeCell should seek administrative remedies, it has waived any right to complain about DeCell's lack of filing for determination of insured depositor status th[r]ough the administrative process.

DeCell's waiver arguments are without merit. First, DeCell's contention that the FDIC's intervention was a "general appearance" because it did not expressly limit its appearance to that of Receiver is misguided. It is well-settled that the FDIC operates in two separate and legally distinct capacities, each with very different responsibilities. *See Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 2 n. 1 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion) ("FDIC-Receiver and FDIC-Corporate are distinct legal entities."); *Texas Am. Bancshares, Inc. v. Clarke,* 954 F.2d 329, 335 (5th Cir.1992) ("The separateness of these dual identities of the FDIC has been well respected by federal courts."); *Federal Deposit Ins. Corp. v. Condit,* 861 F.2d 853, 854, 858 (5th Cir.1988). FDIC-Receiver is charged with the responsibility of winding up the affairs of failed

---

[5]Similarly, DeCell seems to contend that the FDIC waived its right to argue that it appeared in the limited capacity of Receiver because the FDIC did not specifically raise a lack of capacity defense when it intervened in the lawsuit.

institutions, including selling assets and paying creditors' claims. *See* 12 U.S.C. § 1821(d); *Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 2 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion). FDIC-Corporate functions as an insurer of bank deposits, and is charged with paying the insured deposits of failed banks within a reasonable time. *See* 12 U.S.C. § 1821(a); *Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 2 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion).

Only FDIC-Receiver intervened in DeCell's state court lawsuit against Guaranty. As a wholly distinct entity, there was no need for FDIC-Receiver to expressly designate itself as separate from FDIC-Corporate; mere designation of the Receiver status in the pleadings was enough. No lack of capacity allegations or special appearance motions were needed. Only FDIC-Receiver intervened, and because FDIC-Receiver has no authority to make deposit insurance determinations, FDIC-Corporate did not waive its statutory right to require presentation of a deposit insurance claim. *See Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 6-7 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion) (noting that even though FDIC-Receiver was aware of a claim for payment of a letter of credit, the court lacked jurisdiction because a claim had not been submitted to FDIC-Corporate for payment of an insured deposit). As the FDIC noted in its brief, "DeCell simply failed to sue the correct party, FDIC Corporate, on its claim for deposit insurance and neglected to file a claim for

10

deposit insurance with FDIC Corporate."

A review of the record strengthens the conclusion that the exhaustion requirement has not been waived. After a thorough examination of the pleadings, we find that the FDIC originally intervened solely as FDIC-Receiver. The pleadings, in both the captions and the substance, denominate that the FDIC was appearing in its receivership capacity. In fact, the Magistrate granted DeCell permission to amend its complaint to include FDIC-Corporate in a November 18, 1992 order—more than three years after FDIC-Receiver had intervened as defendant on November 14, 1989. We agree with the district court's conclusion that "[t]he notice of removal and the intervenor's amended answer make it abundantly clear ... that there was only one intervenor, FDIC-Receiver." Thus, we disagree with DeCell's assertion that FDIC-Corporate was a party to this litigation from the beginning.[6]

---

[6]DeCell's contention that FDIC-Corporate must have intervened because only FDIC-Corporate could have removed under 12 U.S.C. § 1819 is also unpersuasive. Although § 1819(b)(2)(B) allows for removal, removal is not proper when: 1) the FDIC is a party to the lawsuit, other than as a plaintiff, in its capacity as Receiver of a state bank, and designated as the Receiver by the exclusive appointment of State authorities; 2) the lawsuit involves only the rights or obligations of depositors and the bank itself; and 3) the lawsuit only involves the interpretation of state law. *See* 12 U.S.C. § 1819(b)(2)(D). DeCell argues that these three conditions are met in this case; thus, because removal was allowed, it must have been undertaken by FDIC-Corporate, as FDIC-Receiver would have been statutorily precluded from removing.

Unfortunately for DeCell, the Magistrate allowed FDIC-*Receiver* to remove because "the FDIC has been given latitude in circumventing subparagraph (D) exceptions," and because federal issues were involved in the lawsuit. We agree with these conclusions. Thus, DeCell cannot assert that the mere act of removal was proof that FDIC-Corporate was involved in

11

In addition, the record clearly demonstrates that FDIC-Receiver and FDIC-Corporate timely raised their jurisdictional challenges as soon as they became aware that DeCell was claiming the letter of credit as an "insured deposit." Initially, DeCell's actions were only against Guaranty and JRL, as the original petition and the first amended original petition did not make an insurance deposit claim. After the intervention of FDIC-Receiver, DeCell's lawsuit was viewed "as a claim against the receivership estate," rather than as a claim for deposit insurance. Therefore, FDIC-Receiver appropriately asserted in its answer that DeCell was an unsecured creditor entitled only to a pro rata asset distribution, if entitled to any recovery at all.

Our review of the record indicates that DeCell's first assertion that it was an insured depositor was in pre-trial proceedings in October of 1991. As soon as this deposit insurance claim was made, FDIC-Receiver filed a Memorandum of Authorities contending that DeCell had not raised an insured deposit claim in its pleadings, that the district court had no jurisdiction over insured deposit claims, and that FDIC-Corporate was the proper party to be sued. Moreover, as soon as FDIC-Corporate was joined as a defendant, it too raised the same jurisdictional and exhaustion defenses. Simply put, there is nothing in the record to indicate that FDIC-Corporate was present in the lawsuit from the initial intervention, nor does the record indicate that FDIC-Corporate waived its right to require submission of a deposit

the lawsuit at that time.

insurance claim.

Finally, any assertion that the FDIC's alleged waiver allowed the district court to exercise jurisdiction is wholly without merit.  As mentioned, even if we assume that FDIC-Corporate waived its statutory right to make a "final determination," § 1821(f)(4) clearly provides for review only in the circuit courts of appeal, not in the district courts.  Inasmuch as DeCell is making a subject matter jurisdiction argument, the law is clear that subject matter jurisdiction cannot be waived.  *See Warren v. United States,* 874 F.2d 280, 281-82 (5th Cir.1989);  *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989).

C. District Court Designation Under § 1821(f)(3)(B)

DeCell also contends "that by removing the case, then failing to object to the pendency of DeCell's request for deposit insurance for almost 2 years, FDIC had made a *de facto* designation of the district court to hear the case."  DeCell relies on the language of § 1821(f)(3)(B) which notes that "the Corporation may require the final determination of a court of competent jurisdiction before paying any such claim."  For many of the reasons already discussed, this contention is without merit.

First, as mentioned, both FDIC-Receiver and FDIC-Corporate made timely jurisdictional objections to DeCell's failure to file a deposit insurance claim with FDIC-Corporate.  Contrary to DeCell's assertion that two years had passed before an objection was made, our review of the record indicates that jurisdictional objections were made as soon as DeCell first claimed to be an

13

insured depositor. Neither FDIC-Receiver nor FDIC-Corporate invoked § 1821(f)(3)(B) in any other manner.

Second, FDIC-Receiver's removal to federal court cannot be construed as a *de facto* designation of district court jurisdiction over FDIC-*Corporate.* As discussed, FDIC-Receiver and FDIC-Corporate are wholly separate entities with wholly separate functions. Moreover, we have previously held that "removing a suit instigated by [the plaintiff] to federal court is not the functional equivalent of voluntarily requesting judicial determination under § 1821(f)(3)(B)." *Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 7 n. 5 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion). In short, DeCell's *de facto* designation argument is not supported by the facts or the law.

### D. Due Process

It is undisputed that FDIC-Corporate has not promulgated regulations establishing procedures for resolving deposit insurance claims. DeCell contends that requiring the formal submission of a deposit insurance claim to FDIC's administrative process—a process with admittedly no regulations—amounts "to an unconstitutional denial of due process and a taking of private property for public use without just compensation."

At best, however, DeCell's position is premature. As an initial matter, the statutory language of § 1821(f) clearly states that the promulgation of regulations is not mandatory. Section 1821(f)(3)(A) provides that in the case of disputed deposit

14

insurance claims, "the Corporation *may* resolve such disputed claim in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims" (emphasis added). Similarly, § 1821(f)(3)(B) begins "[i]f the Corporation has not prescribed regulations establishing procedures for resolving disputed claims...." Thus, the statutory language contemplates that formal regulations might not be prescribed.

Second, our cases have previously found that the deposit insurance claims process can withstand constitutional scrutiny. *See Kershaw v. Resolution Trust Corp.,* 987 F.2d 1206, 1210 (5th Cir.1993) (per curiam); *Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 247-48 (5th Cir.1992). In *Nimon,* the petitioners claimed that their due process rights were violated in a deposit insurance dispute because the Resolution Trust Corporation ("RTC") failed to prescribe formal procedural rules; instead, the petitioner's claim was handled through informal procedures. *See Nimon,* 975 F.2d at 247. Although we acknowledged that RTC's decision "affects a property right of the [plaintiffs], implicating the [D]ue [P]rocess [C]lause of the U.S. Constitution," *id.,* we found no due process violation, even though we explicitly noted that the "RTC has no regulations formalizing insurance dispute resolution," and that "FIRREA does not require FDIC to prescribe regulations governing the resolution of these disputes." *Id.* at 247-48.

In *Nimon,* however, we did examine whether the RTC's informal procedures satisfied the demands of due process. *See id.* at 247. As we noted:

15

We make three inquiries in determining the requirements of due process *in a particular case:* (1) the private interests that will be affected by the agency's action; (2) the risk of erroneous deprivation due to the procedures used and the reduction of that risk through additional or substitute procedures; and (3) the interests of the government, including the burden that would be imposed by additional or substitute procedures.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)) (emphasis added). In the present case, DeCell has not submitted a formal deposit insurance claim to FDIC-Corporate; thus, the administrative procedures, formal or informal, have not been invoked. We cannot entertain a due process claim in this particular case because we have no informal procedures to evaluate under the *Mathews* framework; simply put, DeCell's due process claim is premature because no claim has been submitted for FDIC-Corporate's determination. *Cf. Metro County Title, Inc. v. Federal Deposit Ins. Corp.,* 13 F.3d 883, 887-88 (5th Cir.1994) (finding no due process violation after evaluating the FDIC's informal handling of a claim under the *Mathews* framework). With respect to both formal and informal procedures in this case, we cannot find a violation of DeCell's due process rights.[7]

---

[7]DeCell's reliance on the Supreme Court's decision in *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.* ("FSLIC"), 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), does not further its argument. In *Coit,* the Supreme Court held that Coit was not required to exhaust the administrative procedures of the FSLIC because they were "inadequate." *See id.* at 587, 109 S.Ct. at 1374-75. The Court noted that there was a formal regulation allowing the FSLIC to retain a claim for further review for an indefinite period of time. *See id.* at 586, 109 S.Ct. at 1375 ("Under the current regulations, ... no time limit is established for FSLIC's consideration of those claims retained for further review."). In addition, the Court observed that Coit's claim had been under consideration for thirteen months, yet the FSLIC had still not

16

E. "Informal" Proof of Claim

Even though DeCell admits in its brief that it "did not file any proof of claim with FDIC at any time," DeCell argues that its suit against Guaranty sufficed as an informal proof of claim to invoke FDIC-Corporate's administrative procedures. For a number of reasons, we find this argument unpersuasive.

First, as mentioned, only FDIC-Receiver initially substituted for Guaranty, and at that time, DeCell's petition did not make a deposit insurance claim. Thus, DeCell's lawsuit against Guaranty failed to provide notice that the § 1821(f) deposit insurance procedures were applicable. Second, even if the lawsuit did provide notice of a deposit insurance claim, only FDIC-Receiver would have had that notice. FDIC-Corporate, the entity responsible for handling the deposit insurance claims, was not joined in the lawsuit until a later time. Finally, even if we assume (without deciding) that an "informal proof of claim" is legitimate, the

made a determination. *See id.*

In *Coit,* however, these facts led the Supreme Court to waive the *exhaustion* requirement; a due process violation was neither mentioned nor addressed by the Court. Moreover, unlike the FSLIC regulation that was facially inadequate in *Coit,* FDIC-Corporate has no formal regulations regarding the time periods for consideration of claims. Similarly, in contrast to Coit's submission of its claim to the FSLIC, DeCell has not yet submitted its claim to FDIC-Corporate; thus, we cannot evaluate whether the informal procedures used by FDIC-Corporate are "inadequate." Finally, we have previously affirmed the deposit insurance exhaustion requirement, *see Aztec General Agency v. Federal Deposit Ins. Corp.,* No. 93-1424, slip op. at 6-7 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion), and even if we were to waive it, § 1821(f) does not provide for review in the district courts.

district court would still not have jurisdiction; first, because FDIC-Corporate has yet to make a "final determination," and second, because § 1821(f)(4) provides for review only in the circuit courts of appeal. Based on this analysis, the "informal proof of claim" argument is not helpful to DeCell.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing DeCell's claims against FDIC-Receiver and FDIC-Corporate for lack of jurisdiction is AFFIRMED.