881 F.Supp. 979 (1995)
COMMONWEALTH OF PENNSYLVANIA
v.
FEDERAL DEPOSIT INSURANCE CORPORATION.
Civ. A. No. 94-2677.
United States District Court, E.D. Pennsylvania.
March 28, 1995.
*980 Edward J. Morris, Stuart M. Bliwas, Harrisburg, PA, for plaintiff.
Alan S. Gold, Elkins Park, PA, for defendant.

MEMORANDUM
O'NEILL, District Judge.

I. Introduction

Currently before the Court is defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. Rule 12(b) on the grounds that the Federal Deposit Insurance Corporation (FDIC) as receiver had no obligation to honor plaintiff's letter of credit. Plaintiff responds that its letter of credit constitutes an insured deposit which the FDIC as insurer must honor. The FDIC asserted in its reply and at oral argument that this Court must nonetheless dismiss the complaint because: (1) plaintiff has failed to exhaust its administrative remedies; (2) this Court lacks jurisdiction over plaintiff's claim against the FDIC as insurer; (3) plaintiff can not show that it was a depositor in the Meritor Savings Bank (Meritor) when the FDIC assumed control of Meritor on December 11, 1992; (4) pursuant to its take over of Meritor the FDIC transferred the liability represented by the letter of credit to Mellon Bank; (5) the letter of credit had no value on December 11, 1992; even if it were to be construed as an insured deposit and; (6) pursuant to Federal Deposit Insurance Corp. v. Philadelphia Gear Corp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986), the letter of credit fails to constitute an insured deposit.
Also before the Court is plaintiff's Motion to Compel Production.
For the reasons that follow, I need reach only defendant's arguments that plaintiff has failed to exhaust its administrative remedies and that this Court lacks jurisdiction over plaintiff's claim against the FDIC in its capacity as insurer. I will therefore treat defendant's motion as arising under Fed. R.Civ.P. Rule 12(b)(1).

II. Background

The facts as alleged in the complaint are as follows. On August 26, 1991, Greylag Technical Services of Pennsylvania, Inc. (Greylag) applied to the Pennsylvania Department of Environmental Resources (DER) for a license to transport hazardous waste. Greylag received a license on October 31, 1991 and was required to post a bond in the amount of $10,000.00. To fulfill this bond obligation Greylag secured from Meritor an irrevocable and automatically renewable standby letter of credit in favor of the DER.
*981 On March 1, 1993 the FDIC informed the DER by letter that the Secretary of Banking of the Commonwealth of Pennsylvania had declared Meritor unsound, that the FDIC had been appointed receiver and that all lines of credit issued by Meritor were terminated. The letter also informed the DER that if the DER believed it had a provable claim it was required to file a proof of claim with the FDIC no later than March 19, 1993.
On March 17, 1993 the DER wrote to the FDIC asserting that the DER's pre-existing agreement with Greylag entitled the DER to draw upon the Meritor letter of credit if Greylag failed to make good the bond with acceptable collateral within thirty days. Greylag failed to provide substitute collateral. By letter dated May 21, 1993 the DER demanded that the FDIC honor the letter of credit.
On June 14, 1993, the DER received a letter from the FDIC repudiating any obligation with respect to the letter of credit. In letters dated June 24, 1993 and August 6, 1993 the DER demanded that the FDIC honor the letter of credit within thirty days and threatened legal action. On August 24, 1993 the DER received a proof of claim form from the FDIC as receiver. The form stated that any claim received after March 19, 1993 would be considered legally barred pursuant to 12 U.S.C. § 1821(d)(5)(C).[1]

III. Legal Standard

In reviewing a Rule 12(b)(1) motion that challenges the court's actual jurisdiction to hear a claim "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed issues of material fact will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977), disapproved on other grounds, Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895 (3d Cir.1987). A district court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." Frankford Hospital v. Davis, 647 F.Supp. 1443, 1445 (E.D.Pa.1986). Further, "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

IV. Discussion

I first address defendant's argument that this Court lacks subject matter jurisdiction because 12 U.S.C. § 1821(f) vests jurisdiction over plaintiff's claim in the Court of Appeals exclusively.
Title 12 § 1819(a) provides that the FDIC may "sue and be sued, and complain and defend, in any court of law or equity, State or Federal." See Ensign Financial Corp. v. FDIC 785 F.Supp. 391, 400 (S.D.N.Y.1992). Title 12 U.S.C. § 1819(b)(2) provides, with exceptions not relevant here, that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."
Defendant argues, however, that this Court is divested of jurisdiction in the present matter by 12 U.S.C. § 1821(f) which provides in relevant part:
(3) Resolution of disputes
(A) Resolutions in accordance to corporation regulations
In the case of any disputed claim relating to any insured deposit or any *982 determination of insurance coverage with respect to any deposit, the Corporation may resolve such disputed claim in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims.
(B) Adjudication of claims
If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims, the Corporation may require the final determination of a court of competent jurisdiction before paying any such claim.
(4) Review of corporation's final determination
Final determination made by the Corporation shall be reviewable in accordance with chapter 7 of Title 5 by the United States Court of Appeals for the District of Columbia or the court of appeals for the Federal judicial circuit where the principal place of business of the depository institution is located.
(5) Statute of limitations
Any request for review of a final determination by the Corporation shall be filed with the appropriate circuit court of appeals not later than 60 days after such determination is ordered.
It is uncontroverted that the FDIC has not prescribed regulations for resolving disputes with respect claims for deposit insurance (insured deposit claims) pursuant to § 1821(f)(3)(A). See Nimon v. RTC, 975 F.2d 240, 243 (5th Cir.1992).
The Court of Appeals for the Third Circuit has not addressed the issue of original jurisdiction respecting insured deposit claims denied by the FDIC in the absence of § 1821(f)(3)(A) regulations and the Courts of Appeal that have addressed the issue have reached conflicting conclusions. The Courts of Appeal for the Second and Fifth Circuits have held, as defendant here argues, that § 1821(f)(4) vests original jurisdiction over such disputes in the Court of Appeals. See, e.g., Kershaw v. RTC, 987 F.2d 1206 (5th Cir.1993); Nimon, 975 F.2d at 240; Abrams v. FDIC, 938 F.2d 22 (2d Cir.1991). The Courts of Appeal for the District of Columbia and the First Circuit, however, have held that § 1821(f)(4) vests jurisdiction in a court of appeals only when the FDIC has promulgated regulations pursuant to § 1821(f)(3)(A) and denied the insured deposit claim pursuant to those regulations. See Callejo v. RTC, 17 F.3d 1497 (D.C.Cir.1994); Massachusetts v. FDIC, 47 F.3d 456 (1st Cir.1995). My review of the statute leads me to the result reached by the D.C. Circuit in Callejo though my reasoning differs in part.
In Nimon v. RTC, 975 F.2d at 244, the Court of Appeals for the Fifth Circuit held that a court of appeals has jurisdiction over all agency decisions with respect to insured deposit claims and that judicial review of FDIC decisions with respect to those claims is subject to the deferential standard prescribed in the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. The Nimon Court noted that § 1821(f)(4) provides that all final determinations by the agency shall be reviewable by a court of appeals and then concluded that any FDIC decision with respect to an insured deposit claim  whether pursuant to § 1821(f)(3)(A) regulations or not  or an agency failure to decide such a claim constitutes a final determination for the purpose of § 1821(f)(4).[2]Id. at 244; see also Abrams, 938 F.2d at 25.
In Callejo, the Court of Appeals for the D.C. Circuit considered the issue addressed in Nimon and held that the district court has jurisdiction to conduct a de novo proceeding with respect to an agency's decision to deny an insured deposit claim in the absence of § 1821(f)(3)(A) regulations. See Callejo, 17 F.3d at 1497. The Callejo Court concluded that an agency decision to deny an insured deposit claim constitutes a final determination only if that decision is reached in accordance with § 1821(f)(3)(A) regulations. Id. at 1499. Because the FDIC has failed to adopt such regulations the Callejo Court held *983 that § 1821(f)(4) does not divest the district court has subject matter jurisdiction over an insured deposit claim. Id.
The Callejo Court also rejected the argument that a proceeding in district court challenging an agency decision to deny an insured deposit claim should be subject to the APA's deferential standard. Id. at 1500. While conceding that in the absence of statutory provisions to the contrary the APA might control judicial review of agency decisions made pursuant to § 1821(f) the Callejo Court concluded that § 1821(f)(3) "supplants the APA and sets up a different relationship between the agencies and the courts. That is why it was necessary to incorporate the APA's standards of review into section 1821(f)(4)." Id.
I am persuaded by the Callejo Court that the agency may make a final determination only by prescribing regulations pursuant to § 1821(f)(3)(A). I therefore decline to follow the Nimon Court and I will conclude that this Court has subject matter jurisdiction over plaintiff's claim and that plaintiff is entitled to a de novo proceeding.
I am not persuaded, however, that plaintiff is entitled to a de novo proceeding because § 1821(f)(3) supplants the APA. See Callejo, 17 F.3d at 1500-01. I note that § 1821(f)(3) is silent with respect to insured deposit determinations that the FDIC may make in the absence of § 1821(f)(3)(A) regulations. Since the APA governs agency actions within its ambit and the judicial review of those agency actions unless Congress specifies otherwise, I am not convinced that § 1821(f)(3) can be read to displace the APA with respect to judicial review of an FDIC determination made in the absence of § 1821(f)(3)(A) regulations. Rather, I am persuaded that a district court may entertain plaintiff's claim in a de novo proceeding because the APA is inapplicable to determinations that the FDIC as insurer makes pursuant to § 1821(f).
The APA prescribes the standards of judicial review applicable to both formal and informal agency adjudications.[3]See 5 U.S.C. §§ 554(a), 555, 706; see also Pension Benefit Guaranty Corp. v. The LTV Corp., 496 U.S. 633, 655, 110 S.Ct. 2668, 2680, 110 L.Ed.2d 579 (1990) (stating that informal adjudications are governed by the "minimal requirements" which are set forth in § 555 of the APA).
In Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court addressed the question of when agency decisions constitute adjudications for the purpose of the APA.[4] The Court held the deferential standards of review prescribed in the APA only apply to decisions made by an agency when Congress has granted that agency the power to adjudicate claims before it with the force of law. See id. at 572-73, 109 S.Ct. at 1368.
Neither the Supreme Court nor the Court of Appeals for the Third Circuit has addressed the issue of whether Congress granted the FDIC as insurer the power to adjudicate insured deposit claims with force of law under § 1821(f). In Coit, the Supreme Court addressed the issue of whether Congress granted the FSLIC as receiver the power to so adjudicate creditors' claims and concluded that Congress had not granted the agency that authority. See id. at 561, 109 S.Ct. at 1361. The Court reviewed the traditional powers allocated to a party acting as a receiver and the language of the enabling statute and concluded:
the directive that [the agency] as receiver "shall pay all valid credit obligations of the association" cannot be read to confer upon [the agency] the power to adjudicate claims ... subject only to review under the Administrative Procedure Act. This provision simply empowers [the agency], much like an ordinary insurance company, to pay those claims proved to its satisfaction. It *984 does not give [the agency] the power to adjudicate claims with force of law; nor does it preclude claimants from resorting to the courts for a determination of the validity of their claims.
At the onset I note the similarity of the language of the enabling statute in Coit and Congress' charge to the FDIC as insurer in § 1821(f) that the "payment of insured deposits in such institution shall be made by the [agency] as soon as possible...." 12 U.S.C. § 1821(f)(1). Further, the Coit Court observed that in the instances where Congress intended to confer adjudicatory authority on the FSLIC "it did so explicitly and set forth the relevant procedures in considerable detail." Id. at 574, 109 S.Ct. at 1371. Section 1821(f), on the other hand, provides only the cursory command that "[t]he [FDIC], in its discretion may require proof of claims to be filed and may approve or reject such claims for insured deposits." 12 U.S.C. § 1821(f)(2). I am convinced that § 1821 embodies Congress' purpose to permit the FDIC to act effectively in its capacity as deposit insurer and does not grant the FDIC as insurer the power to adjudicate those claims with force of law.[5]
This conclusion is strengthened by the fact that § 1821 makes no explicit reference to the agency possessing the power to adjudicate insured deposit claims. The statute refers to agency decisions made in accordance with § 1821(f)(3)(A) regulations as "resolutions" rather than adjudications. See 12 U.S.C. § 1821(f)(3)(A). The statute only refers to the adjudication of insured deposit claims with respect to claims resolved by a court of competent jurisdiction. See 12 U.S.C. § 1821(f)(3)(B). Congress is well aware of the words it chooses in drafting legislation and if it had wished to confer adjudicatory authority upon the FDIC as insurer with respect to insured deposit claims it could have done so easily. Congress, however, chose to characterize the FDIC's function under § 1821(f) as one of resolution rather than of adjudication.
I conclude that the FDIC as insurer lacks the power to adjudicate insured deposit claims with force of law and that the APA is inapplicable to FDIC actions taken with respect to those claims.[6] As such, I conclude that this court has jurisdiction to conduct a de novo proceeding with respect to plaintiff's claim.
I now turn to defendant's argument that this Court must dismiss the complaint due to plaintiff's failure to exhaust administrative remedies. The Court of Appeals for the Third Circuit has not addressed the issue of whether § 1821(f) implicitly requires a party to submit an insured deposit claim to the FDIC as insurer prior to filing a suit seeking federal deposit insurance coverage. Defendant argues that § 1821(f) should be read to contain an administrative exhaustion requirement.
Where a statute does not explicitly provide an exhaustion requirement "courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." Coit 489 U.S. at 579, 109 S.Ct. at 1372 (quoting Patsy v. Florida Board of Regents, 457 U.S. 496, 502, n. 4, 102 S.Ct. 2557, 2560, n. 4, 73 L.Ed.2d 172 (1982)). Title 12 U.S.C. § 1821(f)(1) provides:
In the case of the liquidation of, or other closing or winding up of the affairs of, any insured depository institution, payment of the insured deposits in such institution shall be made by the [FDIC] as soon as possible....
Without more, this language might support the argument that Congress intended the FDIC as insurer to be obligated to pay insured deposits in the absence of specific claims by insureds. So construed the statutory scheme might not imply an exhaustion requirement.
*985 I note, however, that an exhaustion requirement is consistent with § 1821(f) when that statute is viewed in its proper context of enabling the FDIC to function effectively as a deposit insurer. See King v. St. Vincent's Hospital, 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (citation omitted) (the meaning of statutory language depends upon context); Hudson United Bank v. Chase Manhattan Bank, 43 F.3d 843, 847-48 (3d Cir.1994) (same). An insurer's obligation to satisfy a loss does not normally arise in the absence of a claim for coverage filed by the insured. While § 1821(f)(1) may reflect a congressional intent that the FDIC as insurer shall act promptly with respect to the deposits of insured institutions that fail, I do not read that subsection to require the FDIC as insurer to honor claims which have not been presented to it and which it may dispute. Section 1821(f)(2) provides:
(2) Proof of claims
The [FDIC], in its discretion, may require proof of claims to be filed and may approve or reject such claims for insured deposits.
This grant of discretion would be a nullity were claimants able to pursue claims in court prior to submitting them to the FDIC as insurer.[7] I therefore construe § 1821(f)(2) to imply an exhaustion requirement with respect to insured deposit claims.[8]
The result I reach is consistent with that reached by the Court of Appeals for the Fifth Circuit in DeCell & Associates v. FDIC, 36 F.3d 464 (5th Cir.1994). The DeCell Court rejected plaintiff's assertion that the use of the term "may" in § 1821(f)(2), (3) indicates that "there is nothing mandatory about filing of claims or the approval or rejection of the claims process" and held that the court lacked jurisdiction over an insured deposit claim which had not been presented to the FDIC as insurer. Id. at 468 (quotation omitted).[9]
In the present matter it is uncontroverted that the FDIC as insurer has yet to receive a claim from plaintiff. Plaintiff notified the FDIC of its claim in several letters. This correspondence, however, was not directed to the FDIC as insurer and did not convey plaintiff's now asserted belief that the standby letter of credit constituted an insured deposit. Further, when plaintiff filed a creditor claim form with the FDIC as receiver plaintiff failed to alert the agency that plaintiff believed its claim was also recoverable as an insured deposit. I conclude that plaintiff has thus far failed to submit its claim to FDIC as insurer and has therefore failed to meet the administrative exhaustion requirement implicit in § 1821(f). Cf. Aztec General Agency v. FDIC, No. 93-1424, slip op. at 6-7, 16 F.3d 1214 (5th Cir. Feb. 7, 1994) (per curiam) (unpublished opinion) (quoted in DeCell, 36 F.3d at 468).
Even were I not to conclude that § 1821(f) implicitly requires administrative exhaustion prior to the filing of a suit to recover an insured deposit, I would nonetheless conclude that plaintiff's claim is not ripe.
Closely related to and often overlapping the doctrines of exhaustion and finality,[10] the ripeness doctrine:
is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been for *986 malized and its effects felt in a concrete way by the challenging parties.
Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In Hall v. Curl, 566 F.2d 619 (8th Cir.1977), the residents of various properties owned by the United States sought a declaratory judgment that plaintiffs were entitled to the benefits of owners rather than those benefits due tenants under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 et seq. The Court of Appeals affirmed the district court's dismissal of plaintiffs' claims noting that the district court had concluded:
it is clear that none of the plaintiffs have made any application for any benefit as either an owner or as a tenant. Until and unless some application is made and acted upon it is extremely doubtful whether it can even be said that an actual case or controversy exists between a particular plaintiff and the defendant.
Id. at 621 (quoting district court).
I am persuaded by the reasoning of the Hall Court. Plaintiff has not submitted a deposit claim to the FDIC as insurer and I therefore conclude that without respect to any exhaustion requirement implicit in § 1821(f) there exists at present no case in controversy that is ripe for judicial review.[11]

ORDER
AND NOW, this 28 day of March, 1995 upon consideration of defendant's motion to dismiss, plaintiff's motion to compel production and the filings of parties relating thereto, it is hereby ORDERED that:
1. Defendant's motion to dismiss is GRANTED with respect to the FDIC as receiver.
2. Defendant's motion with respect to FDIC as insurer is GRANTED as plaintiff's claim is not ripe.
3. Plaintiff's complaint is DISMISSED.
4. Plaintiff's motion to compel production is DENIED as moot.
NOTES
[1] Defendant asserts that the complaint fails to state a basis for this Court's jurisdiction against the FDIC as receiver because plaintiff has not pled 12 U.S.C. § 1821(d)(6)(A) as the jurisdictional basis of the complaint. See 12 U.S.C. § 1821(d)(13)(D) (providing that 12 U.S.C. § 1821(d) is the sole basis of jurisdiction for an action by a creditor against FDIC as receiver). At oral argument plaintiff stated that it asserts a claim only against the FDIC as insurer pursuant to 12 U.S.C. § 1821. I will therefore grant defendant's motion to dismiss with respect to defendant FDIC as receiver.

I note that the complaint names the FDIC as "the [r]eceiver and insurer of deposits of Meritor Savings Bank ... pursuant to 12 U.S.C. § 1821(c)...." Complaint, ¶ 4. I conclude that the complaint is sufficient to place the FDIC on notice that plaintiff sought what it considered an insured deposit.
[2] In determining that the district court lacked jurisdiction to review an agency's denial of an insured deposit claim where the agency had not promulgated regulations pursuant to § 1821(f)(3)(A) the Nimon Court conceded the practical merit of permitting the district court to adjudicate the dispute in the first instance to permit the development of a record suitable for appellate review. See Nimon, 975 F.2d at 243-44.
[3] The APA defines an adjudication as "agency process for the formation of an order." 5 U.S.C. § 551(7). The APA defines an order as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rulemaking...." 5 U.S.C. § 551(6).
[4] The statutory provision at issue in Coit has been superseded. See Bender v. Centrust Mortgage Corp., 833 F.Supp. 1540, 1542 (S.D.Fla. 1992).
[5] In Callejo, the D.C. Circuit noted the holding of Coit but declined to use that decision as a basis for its holding. See Callejo, 17 F.3d at 1500.
[6] Perhaps to encourage the FDIC to promulgate regulations pursuant to § 1821(f)(3)(A) Congress provided that agency resolutions pursuant to such regulations should nonetheless be accorded the deferential standard of review normally reserved for agency adjudications made pursuant to the APA. See 12 U.S.C. § 1821(4).
[7] I note that the discretionary grant provided in § 1821(f)(2) is not contingent upon the FDIC prescribing regulations.
[8] There is no claim before this Court that the administrative exhaustion requirement claimed by the FDIC requires that claimants do more than provide the FDIC as insurer with notice of the claim and wait for a reasonable period of time before filing suit to allow the FDIC to pay, settle or disallow the insured deposit claim. See Coit, 489 U.S. at 584, 109 S.Ct. at 1374.
[9] I do not, however, adopt the DeCell Court's specific holding that a court lacks jurisdiction to adjudicate an insured deposit claim until the FDIC has rendered a final determination pursuant to § 1821(f). Unlike the DeCell Court I do not consider the FDIC's denial of an insured deposit claim in the absence of § 1821(f)(3)(A) regulations to constitute a final determination.
[10] See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §§ 3532.6, 3942.
[11] Plaintiff has not argued that presentation of its claim to the FDIC as insurer would be futile. In its motion FDIC asserts that plaintiff's letter of credit does not constitute an insured deposit. I do not construe this assertion to mean that the FDIC has already decided plaintiff's claim and that plaintiff is therefore experiencing present harm as a result of that decision.