**NORTH AMERICAN FUND MANAGEMENT CORPORATION d/b/a Noramtrust U.S.A., et al., Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION.**

No. 92–5039.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1993.

Decided May 7, 1993.

Andrew T. Canfield, with whom Edward F. Canfield, Washington, DC, was on the brief, for appellants.

Thomas L. Holzman, Counsel, F.D.I.C., with whom Thomas A. Schulz, Asst. Gen. Counsel, and Colleen B. Bombardier, Senior Counsel, F.D.I.C., Washington, DC, were on the brief, for appellee.

Before: RUTH BADER GINSBURG, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The $100,000 limit on federal insurance of savings and loan accounts covers revocable trust accounts—accounts that a grantor typically sets up in his or her name for life, with a beneficiary to take at the grantor's death (so long as there has been no revocation in the meantime). In applying the $100,000 limit, the Federal Savings and Loan Insurance Corporation (which was succeeded in August 1989 by the Federal Deposit Insurance Corporation[1]) drew a distinction between accounts for the benefit of the spouse, children and grandchildren of the owner or grantor (allowing insurance of up to $100,000 for each *beneficiary*'s interest) and accounts for the benefit of others (aggregating the account with the *owner*'s individual accounts and allowing insurance of $100,000 for the aggregate). 12 CFR § 564.4 (1989). In considering an account originated by plaintiff Berta Maria Bremond for six beneficiaries, of whom three were daughters of her sister, Jeannette Bremond–Piquet, the FDIC disregarded the later addition of Bremond–Piquet's name as grantor and life beneficiary of the account, and accordingly denied the account the favorable treatment for trusts in favor of the owner's children. Although the pertinent regulations are by no means crystal clear, we find their interpretation by the FDIC here reasonable and accordingly affirm the district court's judgment dismissing plaintiffs' action. 785 F.Supp. 176.

\* \* \* \* \* \*

In 1978 Berta Maria Bremond deposited money in a revocable trust account with Noramtrust, a firm that with various affiliates operates a "fiduciary service" for European and other foreign investors and that invested such funds in U.S. savings and loan associations to take advantage of their high interest rates. In May 1985 Noramtrust invested the funds in a Certificate of Deposit from the now-defunct Vernon Savings and Loan Association of Vernon, Texas. Noramtrust thereafter rolled over the CD every three months until August 1987, when Vernon became insolvent and was placed in receivership by the FSLIC. The nominal value of the account was then $188,000.

In the meantime, evidently in July 1985,[2] Bremond added her sister, Jeannette Bremond–Piquet, to the account as a fellow grantor, trustee and life beneficiary. Of the trust's six beneficiaries to take at the death of the grantor(s), three were daughters of Bremond–Piquet, but none was a spouse, child, or grandchild of Bremond. At least by November 1986, the periodic instructions between Noramtrust affiliates relating to rolling over the CD spoke of it as being registered for *both* sisters, in trust for the various younger beneficiaries.

■ The FDIC regulation on computation of the $100,000 limit for revocable trusts provides:

(a) Funds *owned by an individual and invested* in a revocable trust account, ... evidencing an intention that on his death the funds shall belong to his spouse, child, or grandchild, shall be insured up to $100,000 in the aggregate as to each such named beneficiary, separate from any other accounts of the owner.

---

1. See 12 U.S.C. § 1437 Note, § 1821a(a)(2). For simplicity's sake we will usually refer to either entity as the FDIC.

2. Noramtrust "issued" a signature card to reflect the new ownership on July 12, 1985; a signed version dated September 4, 1987, evidently a copy of a later signature card, appears in the Joint Appendix. The difference in dates appears immaterial.

(b) If the named beneficiary of such an account is other than the owner's spouse, child or grandchild, the funds in such account shall be added to any individual accounts of such owner and insured up to $100,000 in the aggregate.

12 CFR § 564.4 (1989) (emphasis added).

To see whether the requisite family relation exists, the regulation clearly requires the agency to identify the "individual" who owned the funds and invested them in the account. As it has in other cases, the FDIC here interpreted the regulation to refer to the person who owned the funds when they were *initially* deposited into the trust account—in this case, Bremond—*unless* that person can produce extrinsic evidence that she intended to make a gift of all or part of the funds to the additionally named "grantor". See FDIC Letter of September 18, 1989 at 2. The most obvious example of such evidence would be a gift tax return of the supposed donor or an income tax return of the added grantor reflecting receipt of income from her life interest.

The two sisters offered no such evidence. They filled in and submitted, however, FDIC forms called "Declarations for Testamentary Account". The first, dated March 6, 1988, said that Bremond alone had contributed 100% of the funds originally deposited in the account. The second, dated November 1, 1988, said that Bremond and Bremond–Piquet had each contributed 100% of the funds. The sisters provided evidence as to the successive roll-overs of the CD, and argued that they had thus established that the CD account at the time of Vernon's demise was not only jointly owned by them both as co-grantors but also that it had—in a sense—originated with them both. The FDIC, however, viewed the submissions as inadequate, saying that "while such evidence does support legal ownership of the funds by both trustees, it does not support the proposition that [Bremond–Piquet] owned any of the funds contributed to the Bremond trust." Though the sentence is garbled, in context there can be little doubt that the FDIC meant that Bremond–Piquet was not the owner of the funds before the initial establishment of the trust account and that there had been inadequate evidence of a genuine subsequent transfer from Bremond to Bremond–Piquet.

Noramtrust and the sisters filed an action in district court, challenging the FDIC's interpretation of § 564.4 to mean that the owner of funds for account insurance purposes is the original contributor of funds. Plaintiffs also contested the FDIC's requirement of extrinsic evidence of a consummated gift, arguing that Bremond's addition of Bremond–Piquet as a grantor of the trust, in combination with boilerplate language in the trust agreement characterizing the contribution of any trustee/life beneficiary as a gift to any other trustee/life beneficiary, should have been enough. The district court rejected these arguments and upheld the FDIC's actions.

\*　　\*　　\*　　\*　　\*　　\*

■■■ As neither party contests Bremond's full ownership of the funds originally invested in the trust account, the only issue is the reasonableness of the FDIC's interpretation of § 564.4 (including its insistence on extrinsic evidence of a transfer). An agency's interpretation of its own regulation is entitled to deference "unless it is plainly erroneous or inconsistent with the regulation." *K.N. Energy, Inc. v. FERC*, 968 F.2d 1295, 1299 (D.C.Cir.1992); *Lambert v. FDIC*, 847 F.2d 604, 606 (9th Cir.1988). The agency's reading need not be the "most natural or the most logical," but only "reasonable and consistent with the regulation." *K.N. Energy*, 968 F.2d at 1299–1300 (citations and internal quotation marks omitted). The deference exceeds that owed an agency's interpretation of its own enabling statute, *id.* at 1300; the agency is the source of the regulations and also has the power to amend them.

■■■ As the FDIC points out, § 564.4(a) itself refers to "[f]unds *owned* by an individual and *invested* in a revocable trust account" (emphasis added). It argues, reasonably enough, that this refers to a person who initially *owns funds* and *then invests* them in the trust account, so that the

identity of the "owner" under the regulation will normally be fixed at the time of the initial investment.

Indeed, the FDIC has consistently and repeatedly interpreted § 564.4 to equate the "owner" of a trust account with the original contributor, making an exception only when the parties produce extrinsic evidence of a gift. See, for example, Insurance Appeal No. 89–225–5871 (Nov. 7, 1989, and Mar. 19, 1990); Insurance Appeal No. 87–155–6483 (Jan. 15, 1988); Insurance Appeal No. 87–078–8259 (July 13, 1987); Insurance Appeal No. 86–359, 1987 FHLBB LEXIS 231 (Mar. 24, 1987). In addition, the *FSLIC Manual for Insurance Determinations*, which was in effect at the time the FDIC decided this case and which sets forth procedures for implementing the regulations, provides that when a revocable trust account has more than one owner, the first step is to determine each owner's "interest" from the Declaration for Testamentary Account.

> If the trustees are family members, then the Declaration ... is accepted without any documentation to support the trustees' ownership interests in the account. The one exception to this rule is when there is an account record or other evidence which is inconsistent with the ownership interests stated in the [Declaration]. For instance, occasionally the trustees ask to complete a second Declaration in order to change their previously stated ownership interests and thereby increase the insurance on the account. In this situation, the trustees will be allowed to complete a second Declaration; however, they must also provide *extrinsic evidence supporting their ownership interests* in the account.

Manual at 25; see Joint Appendix 72, 78 (emphasis added). The FDIC's inquiry in this case was thus consistent with established agency practice. Here, even if the sisters had filed only the second Declaration (naming both as co-owners), the inconsistency between that Declaration and the evidence as to the origin of the account would have triggered the FDIC's extrinsic evidence rule. In view of the potential for expansion of FDIC coverage through ma-

nipulation of revocable trust accounts, and stated congressional concern over just such manipulation, see, e.g., 112 Cong.Rec. 26472–73 (Oct. 13, 1966) (expressing concern with "the use of devices such as ... revocable trust accounts to obtain insurance far in excess of the limits established by Congress") (statement of Sen. Robertson, member of the Conference Committee for the 1966 FSLIC legislation), the FDIC's reading seems entirely reasonable. So far so good.

Unfortunately · the regulations contain some conflicting passages. First, plaintiffs argue since the account here was a joint one, it should be governed by the following statement on joint accounts:

> The interests of the co-owners of a joint account shall be deemed equal, unless otherwise stated on the insured institution's records in the case of a tenancy in common.

12 CFR § 564.2(b)(3) (1987). Under this, say the plaintiffs, the account should enjoy the benefit of the presumption in favor of equal interests of the co-owners. But the regulations elsewhere indicate that the FDIC considers "joint accounts" and "testamentary accounts" to be separate animals, subject to separate regulations. Compare 12 CFR § 564.4 (testamentary accounts) with 12 CFR § 564.9 (joint accounts); see, e.g., United States League Federal Guide ¶ 11,271 at 3448 (1987). So the nonapplication of this provision appears reasonable.

· Even when we reach testamentary trusts there are problems. Plaintiffs point to Appendix B to 12 CFR § 564, entitled "Testamentary Accounts," which states that:

> In the case of a revocable trust account, the person who holds the power of revocation is deemed to be the owner of the funds in the account.

12 CFR § 564 App. B. The FDIC appears not to dispute that Bremond–Piquet held a power of revocation.

The FDIC argues that this passage is intended merely to distinguish the "true" owner, who must have the power of revocation, from someone acting purely as a

trustee or fiduciary. Thus the power of revocation is a necessary condition of ownership, but not sufficient for purposes of § 564.4(a). In support of this reading, the FDIC points to the next sentence, which states that "[i]f a revocable trust account is held in the name of a fiduciary other than the owner of the funds, any other accounts held by the fiduciary are insured separately from such revocable trust account." 12 CFR § 564 App. B.

The FDIC also notes one of the five examples that follow this passage and are designed to provide guidance for interpretation of the regulations. Example 4 sets forth a hypothetical case in which a husband and wife each invest $200,000 in a revocable trust account for their son and daughter. The husband and wife are each described as the "owner of one half of the funds" in the account. *Id.* Unless the FDIC's premise about the centrality of original ownership were correct, the example would presumably refer to both spouses as "owners" rather than specifying the proportion of each one's ownership interest, which simply reflects their respective original contributions.

The appellants also assert that state law should control the question of ownership. A choice-of-law clause in the Signature Cards and Trust Agreements executed September 4, 1987, calls for use of New Jersey law, which if controlling would create a presumption that the two sisters owned the trust account in equal shares. N.J.Stat. Ann. § 17:16I–4.

We need not decide whether, if state law were relevant, it would be the law of New Jersey rather than that of Texas, the state in which the insured institute (Vernon) was located. See 12 C.F.R. § 564.2(a) ("Insofar as rules of local law enter into [insurance] determinations, the law of the jurisdiction in which the insured institution's principal office is located shall govern."). The only disputed "ownership" here is a purely federal concept—namely, whether anything happened that was adequate to create in Bremond–Piquet the type of interest required by § 564.4(a). This depended on federal requirements—including the presumption based on the original contribution and the requirement of extrinsic evidence to support assertions of post-origin transfer. See 12 U.S.C. § 1728(a) (1989) (granting the FDIC power to define terms in order to clarify the extent of insurance coverage). While state law might have been relevant to deciding whether Bremond really owned the funds in the initial transfer, cf. Insurance Appeal No. 89–225–5871 (Nov. 7, 1989), it was quite irrelevant here.

Finding the FDIC's interpretation of § 564.4 reasonable despite the inconsistencies in the regulations, we affirm the judgment of the district court.

*So ordered.*