William F. CALLEJO; Adelfa B. Callejo; William D. Graue, Petitioners,

v.

RESOLUTION TRUST CORPORATION, Respondent.

No. 93–1326.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 14, 1994.

Decided March 18, 1994.

Barry H. Gottfried, Washington, DC, argued the cause and filed the briefs for petitioners.

Mitchell E.F. Plave, Washington, DC, argued the cause for respondent. With him on the brief were Jeffrey P. Bloom and Denyse Sabagh, Washington, DC.

Before: MIKVA, Chief Judge, EDWARDS, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

■ Petitioners—who had interests in a variety of accounts at FarWest Savings and Loan Association, a failed thrift—seek review of determinations of the Resolution Trust Corporation (RTC) as to amounts federally insured. Concluding that we lack jurisdiction, we transfer this case to the district court under 28 U.S.C. § 1631.

## I.

When FarWest failed in 1992, the Office of Thrift Supervision appointed the RTC as receiver. The RTC calculated the amounts of insurance due petitioners in accordance with its interpretation of FDIC regulations governing these matters. Petitioners disputed the RTC's position, asserting that they were entitled to some $134,000 more because certain deposits were independently insurable as partnership accounts. The RTC contended that these disputed accounts, although "joint venture" accounts, were not partnership accounts within the meaning of the FDIC regulations and therefore not insurable independent of petitioners' other accounts. After considerable correspondence on this matter, the RTC, by letter of March 23, 1993, denied petitioners' claim, at which point this petition for review was filed. The RTC moved to transfer the case to district court, arguing that we lack jurisdiction to review its denial of petitioners' claim.

## II.

The parties agree that judicial review of the RTC's insurance calculations is governed by 12 U.S.C. § 1821(f). After providing generally for the payment of insured deposits "as soon as possible," 12 U.S.C. § 1821(f)(1) (Supp. IV 1992), that subsection continues as follows:

(3) Resolution of disputes

(A) Resolutions in accordance to Corporation regulations

In the case of any disputed claim relating to any insured deposit or any *determination* of insurance coverage with respect to any deposit, the Corporation may resolve such disputed claim in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims.

(B) Adjudication of claims

If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims, the Corporation may require the *final determination* of a court of competent jurisdiction before paying any such claim.

(4) Review of Corporation's determination

*Final determination* made by the Corporation shall be reviewable in accordance with chapter 7 of Title 5 by the United States Court of Appeals for the District of Columbia or the court of appeals for the Federal judicial circuit where the principal place of business of the depository institution is located.

*Id.* § 1821(f)(3), (4) (emphasis added).

■ The Corporation to which section 1821(f) refers is the FDIC rather than the RTC. *See id.* § 1811. Until 1989, the then-existing version of section 1821(f) unambiguously applied only to the FDIC; the insurance calculations of the Federal Savings & Loan Insurance Corporation (FSLIC), which insured deposits at thrifts like FarWest, were subject to review under a separate statutory scheme. *See* 12 U.S.C. § 1728 (1988), *repealed by* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 407, 103 Stat. 183, 363. When Congress abolished the FSLIC, it made the FDIC the insurer of savings associations as well as banks. *See* 12 U.S.C. § 1811 (Supp. IV 1992). At the same time, however, Congress created the RTC and directed it to "manage and resolve all cases" involving failed savings associations like FarWest. *See id.* § 1441a(b)(3)(A). Congress conferred upon the RTC "the same powers and rights to carry out its duties" with respect to these institutions as the FDIC enjoys under sections 1821–23. *See id.* § 1441a(b)(4)(A). Since powers are defined

partly by their limitations, the judicial review provisions built into section 1821(f) seem inextricably intertwined with the authority that Congress gave the FDIC. Accordingly, we agree with the parties that all of section 1821(f) now applies to the RTC as well as to the FDIC.[1]

Petitioners, supported by both the Second and Fifth Circuits, *Abrams v. FDIC,* 938 F.2d 22, 24–25 (2d Cir.1991); *Kershaw v. RTC,* 987 F.2d 1206, 1208 (5th Cir.1993); *Nimon v. RTC,* 975 F.2d 240, 243–44 (5th Cir.1992), read paragraph (4) as governing *all* judicial review of RTC "determinations." The RTC, on the other hand, argues that court of appeals review is authorized only if the RTC has adopted adjudicatory procedures by regulation pursuant to subparagraph (3)(A), which it has not. In the absence of such regulations, and indeed without a suitable record for appellate review, the RTC insists that Congress plainly intended district court review of RTC decisions not to pay depositors' claims. Only if the agency adopts formal procedures, which presumably would afford claimants typical adjudicatory rights, can it displace the role of a district court. Otherwise, according to the RTC, a claimant must bring his or her case first to a district court. In such a proceeding, the RTC contends that the district court "reviews" the determination of the RTC—and, moreover, that such review is deferential. The record compiled by the district court would merely illuminate the reasons for the RTC decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

We agree with the RTC (and disagree with the Fifth and Second Circuits) that petitioners must bring their action in the district court. In our view, however, such an action would not be one under the Administrative Procedure Act (APA) seeking review of agency action; it would be a *de novo* proceeding.

As we read section 1821(f), Congress gave the FDIC a choice of two alternatives. If it is willing to prescribe regulations setting up adjudicative procedures, the Corporation can go ahead and finally "resolve" disputed claims for insurance coverage, and review of its resolutions will proceed in the courts of appeals under the deferential standards of the APA. This path, of course, has its administrative costs: not only would the Corporation have to promulgate regulations that would provide adjudicative procedures, but it also would have to create a record adequate for review in the courts of appeals. Neither the FDIC nor the RTC has selected this route. But as a result of their choice, neither Corporation is empowered to "resolve" disputed claims within the meaning of the statute. The Corporation can, of course, simply pay the sum demanded by a depositor, in which case no litigation would result. It can also refuse to pay a claim. But section 1821(f) plainly contemplates a distinction between "determinations" of this sort and "*final* determinations" subject to deferential review in the court of appeals. Under paragraph (3)(A), if the Corporation's (initial) "determination" generates a dispute, then the Corporation may "resolve" the dispute and produce a "final determination"—but *only* if it has adopted regulations establishing procedures for doing so. In the absence of such procedures, the Corporation's refusal to pay is not a "final determination" of a disputed claim within the meaning of section 1821(f)(4), and so its decision can give rise only to an original action in district court.

The evolution of section 1821(f) supports this interpretation. The current version of section 1821(f) closely tracks the pre–1989 version, with three significant additions: Section 1821(f)(3)(A) and section 1821(f)(4), as well as the limitations period applicable to petitions for review brought under section 1821(f)(4), are entirely new. That these pro-

---

1. As applied to the RTC, section 1821(f)(4) could be thought to be overridden by 12 U.S.C. § 1441a(*l*)(1) (Supp. IV 1992), which says that "[n]otwithstanding any other provision of law" the federal *district* courts have original jurisdiction over "any civil action, suit, or proceeding to which the [RTC] is a party." As we discuss below, however, Congress plainly meant insurance determinations made under section 1821(f)(3)(A) to be subject to deferential review in the courts of appeals, and it would frustrate the statutory scheme for cases involving such determinations to go to district court instead. This logic applies to the RTC no less than to the FDIC. Accordingly, we do not think that section 1441a(*l*)(1) overrides section 1821(f)(4).

visions entered the statute as a package reinforces our view that section 1821(f)(4) applies only when the FDIC or the RTC "resolve[s]" a claim pursuant to section 1821(f)(3)(A).

In the absence of paragraphs (f)(3) and (f)(4), of course, the FDIC's determination not to pay a claim might well be considered "final agency action" subject to review under the APA. *See* 5 U.S.C. § 706 (1988). *But cf. Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 572, 109 S.Ct. 1361, 1368, 103 L.Ed.2d 602 (1989) (holding that when FSLIC acted in its capacity as receiver of an insolvent thrift, its calculations of amounts due creditors of the thrift were subject to *de novo* adjudication in court). Whatever the proper resolution of this question, however, the existing version of section 1821(f)(3) supplants the APA and sets up a different relationship between the agencies and the courts. That is why it was necessary to incorporate the APA's standards of review into section 1821(f)(4).

We part company with our sister circuits because we disagree that Congress created a third alternative: "[T]he statute permits RTC to *itself* render a final determination, even though there are no regulations formalizing its procedures." *Nimon,* 975 F.2d at 244 (emphasis added). The Fifth Circuit reasoned that the statute says only that "the Corporation *may* require the final determination of a court of competent jurisdiction before paying any such claim," 12 U.S.C. § 1821(f)(3)(B) (Supp. IV 1992) (emphasis added), not that it *must* do so. *See Nimon,* 975 F.2d at 244. Yet Congress' use of the word "may" indicates only that the Corporation need not wait for a court order in order to pay a claim. It tells us nothing about whether the Corporation's refusal to exercise this power is a "final determination" for purposes of section 1821(f)(4). And, as we have noted, the statutory language and structure necessarily imply that the agency's refusal to

pay a claim, although a determination under (3)(A), is not a final determination under (3)(B) and (4).

The position taken by the Second and Fifth Circuits erases section 1821(f)(3)(B) from the statute. If the Corporation's insurance calculations are "final determination[s]" subject to deferential review in the courts of appeals regardless of whether they were reached under the procedures contemplated by section 1821(f)(3)(A), then the district court jurisdiction contemplated by sections 1821(f)(3)(B) and 1441a(*l*) would be a virtual nullity. The Corporation would have no reason to invoke it, and dissatisfied depositors would have no power to invoke it (at least once the Corporation had announced that it was not going to pay them).[2]

The third statutory option which our colleagues on the Fifth and Second Circuits perceive—the agency's capacity to reach a final determination without adopting procedures—led the *Abrams* court to remand to the RTC under directions to create a record *ad hoc* to permit judicial review in the court of appeals. *See Abrams,* 938 F.2d at 25–26 (remanding case to FDIC for "a full, written explanation" of its action); *cf. Nimon,* 975 F.2d at 244 & n. 2 (suggesting that review in the court of appeals requires "the creation of a proper record"). If Congress meant the agency to have a choice not to adopt adjudicatory procedures—which appears undisputed—forcing the agency to adopt such procedures case-by-case whenever judicial review is sought would seem to undermine congressional intent. The convenience of the courts of appeals would supervene a congressional policy determination.

■ In short, we agree with the RTC that *Nimon* and *Abrams* were wrongly decided. But, as we have noted, we do not adopt the RTC's view of section 1821(f) in its entirety. The RTC speaks of section 1821(f)(3)(B) as calling for "review" in the district court, ap-

---

2. Strictly speaking, the Second and Fifth Circuits did not rule out the possibility that the district courts have *concurrent* jurisdiction with the courts of appeals, so that dissatisfied depositors conceivably could bring suit in district court under sections 1821(f)(3)(B) and 1441a(*l*). But this statutory scheme would make little sense, and *Nimon* and *Abrams* seem premised on the notion

that challenges to the Corporation's refusal to pay insurance claims must be brought in the courts of appeals. *Cf. Ramey v. Bowsher,* 9 F.3d 133, 136 (D.C.Cir.1993) ("It is too much to suppose that Congress meant ... to make available both methods of seeking relief from Board discrimination decisions.").

parently under deferential standards similar to those that section 1821(f)(4) directs the courts of appeals to apply to "final determinations" reached in accordance with formalized procedures. Only section 1821(f)(4) deals with "review" in this sense, and Congress did not tell district courts proceeding under section 1821(f)(3)(B) to use the same standards that the courts of appeals would use if the Corporation had issued a "final determination."

The context in which Congress acted confirms that section 1821(f) calls for a *de novo* trial in district court—not review as under the APA.[3] At the time that Congress revised section 1821(f), the FSLIC handled insurance claims under regulations specifying its adjudicative procedures, *see* 12 C.F.R. § 564.1 (1989), while the FDIC did not. Yet the existing statutory scheme did not necessarily recognize the FSLIC's extra effort: the insurance calculations of both Corporations were subject to challenge in the district courts, and judges disagreed over whether the FSLIC's determinations deserved any deference. *Compare, e.g., York Bank & Trust Co. v. FSLIC*, 851 F.2d 637, 640–41 (3d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989) (review under arbitrary-and-capricious standard) *with Kayser v. FSLIC*, 718 F.Supp. 815, 817 (N.D.Cal.1989) *and Jugum v. FSLIC*, 637 F.Supp. 1045, 1046–48 (W.D.Wash.1986) (*de novo* proceedings). When Congress revised section 1821(f), it plainly concluded that insurance determinations reached under formally structured adjudicative procedures merit deferential review in the court of appeals. But the statutory scheme would make little sense if other insurance calculations were also subject to deferential review, albeit in the district court. The distinction between deferential review and *de novo* proceedings, rather than the distinction between deferential review in the court of appeals and deferential review in the district court, is what drives section 1821(f).[4]

\* \* \* \* \* \*

Though we think it clear that we lack jurisdiction to hear this case, petitioners made an understandable mistake when they sought review here instead of filing a *de novo* suit in district court. When they filed their petition, they were abiding by the judgments of the only two circuits to address the issue. Accordingly, without expressing any view as to the merits of their claim, we transfer the case "in the interest of justice" to the United States District Court for the District of Columbia. *See* 28 U.S.C. § 1631 (1988). This transfer should avoid any statute of limitations problems that petitioners might otherwise encounter under 12 U.S.C. § 1822(e).

*So ordered.*

---

**3.** The *de novo* proceedings required here are to be distinguished from the "de novo review" discussed in *Doe v. United States*, 821 F.2d 694, 698 n. 10 (D.C.Cir.1987) (en banc). Here, Congress contemplated a *de novo* trial.

**4.** Even though the district court proceedings contemplated by section 1821(f)(3)(B) are *de novo*, the court might give some deference to the RTC's interpretation of terms of art in the field. But the RTC is on shaky ground when it claims deference for its interpretation of the FDIC's regulations. As we observed in *United States v. Paddack*, 825 F.2d 504 (D.C.Cir.1987), "our deference usually acts in favor of an agency's interpretation of its *own* regulations." *Id.* at 513. Aside from the normal grounds for *Chevron* deference that apply to an agency's interpretations of its enabling statute, the basic reason that courts defer to an agency's interpretation of its own regulations is that "the agency is the source of the regulations and also has the power to amend them." *See North Am. Fund Management Corp. v. FDIC*, 991 F.2d 873, 875 (D.C.Cir.1993). Here, the RTC did not draft the FDIC's rules and cannot alter them. Accordingly, it is the FDIC's interpretation of those rules, not the RTC's, that deserves deference. This conclusion becomes obvious if one hypothesizes a conflict between the RTC and the FDIC over how to interpret the FDIC's regulations. *Cf. Association of Retired R.R. Workers v. United States R.R. Retirement Bd.,* 830 F.2d 331, 334 (D.C.Cir.1987) (noting that agency interpretations of FOIA do not receive *Chevron* deference because "[n]o single agency is entrusted with FOIA's primary interpretation").