COMMONWEALTH OF
MASSACHUSETTS,
Petitioner,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Respondent.

No. 94–1649.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1995.
Decided Feb. 8, 1995.

Thomas O. Bean, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., was on brief, for petitioner.

Edward J. O'Meara, Counsel, with whom Ann S. Duross, Asst. Gen. Counsel, and Richard J. Osterman, Jr., Sr. Counsel, were on brief, for respondent.

Before CYR and BOUDIN, Circuit Judges, and KEETON,* District Judge.

BOUDIN, Circuit Judge.

In the years 1990 through 1992, the Federal Deposit Insurance Corporation was appointed receiver for over 30 banks principally located or doing business in Massachusetts. Massachusetts has an abandoned property statute, Mass.Gen.L. ch. 200A, that arguably gave Massachusetts title under state law to certain of the insured deposits in these banks, based on the failure of the named depositors to communicate with their banks over an extended period. Some of these potential claims had matured prior to the banks' failure; others occurred during the receivership.

In March 1994, Massachusetts wrote to the FDIC naming the banks and asserting that the Commonwealth owned the abandoned deposits and that the FDIC was obligated to pay deposit insurance benefits on those accounts to Massachusetts. An FDIC attorney responded in April 1994 with a two-paragraph letter to the Commonwealth's lawyer reiterating the FDIC's position that the "Massachusetts abandoned property law is preempted by federal law provisions which dictate the disposition of unclaimed deposits." Treating this letter as a dispositive determination, Massachusetts in June 1994 filed a petition in this court seeking review of the FDIC's action.

The underlying dispute raises important questions including interpretation of a federal statute—the Unclaimed Deposits Amendments Act of 1993—which became law in June 1993. 107 Stat. 220. The FDIC position on the merits is that federal law preempts the Massachusetts abandoned property statute as to abandoned deposits held by the FDIC as receiver. But the FDIC urges us not to reach the merits and instead to dismiss for lack of subject matter jurisdiction.

█  We do not reach the merits because we agree with the FDIC's threshold defense that direct review of the FDIC's action in this court is not authorized by statute and that the matter must be resolved in the first instance in the district court. The jurisdictional issue turns, by general agreement, on 12 U.S.C. § 1821(f), whose third and fourth paragraphs read as follows:

(3) Resolution of disputes

(A) Resolution in accordance to corporation regulations

In the case of any disputed claim relating to any insured deposit or any determination of insurance coverage with respect to any deposit, the Corporation [the FDIC] may resolve such disputed claim in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims.

(B) Adjudication of claims

If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims, the Corporation may require the final determination of a court of competent jurisdiction before paying any such claim.

(4) Review of Corporation's determination.

* Of the District of Massachusetts, sitting by designation.

Final determination made by the Corporation shall be reviewable in accordance with chapter 7 of Title 5 by the United States Court of Appeals for the District of Columbia or the court of appeals for the Federal judicial circuit where the principal place of business of the depository institution is located.

It is common ground that the FDIC has chosen not to adopt "regulations ... establishing procedures for resolving such claims" to insured deposits or insurance coverage. In these circumstances, the D.C. Circuit held that direct court of appeals review under section 1821(f)(4) is not available and that such a dispute must first be resolved in a court of general jurisdiction, normally the federal district court. *See Callejo v. RTC,* 17 F.3d 1497 (D.C.Cir.1994). Massachusetts, in response, relies upon decisions of the Second and Fifth Circuits that read section 1821(f)(4) to permit immediate court of appeals review.[1]

Our issue is thus one on which very able judges in different circuits have reached opposite results in construing a rather brief set of statutory provisions. There is certainly some looseness in the language of section 1821(f); but in the end we agree with the D.C. Circuit that language and policy alike favor the FDIC's position. Since two other circuits disagree, we think it fitting to explain our reasoning briefly instead of relying solely on a reference to the excellent discussion in *Callejo.*

In enacting section 1821(f), Congress explicitly gave the FDIC two ways to resolve disputes about insured deposits and insurance coverage of deposits. First, the FDIC can resolve the disputes itself by adopting regulations for resolving such claims. Section 1821(f)(3)(A). If it does so, then under section 1821(f)(4) the dissatisfied claimant can obtain direct court of appeals review of the FDIC's "final determination" pursuant to

the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Second, if "the Corporation has not prescribed regulations" for resolving such claims, the FDIC "may require the final determination of a court of competent jurisdiction before resolving such claims." Section 1821(f)(3)(B).

The phrase "court of competent jurisdiction" assuredly refers to a federal district court or, absent exclusivity or removal, a state trial court. The phrase is often used in this manner, *e.g., Dillard v. United States,* 548 F.2d 1142, 1143 (4th Cir.1977) (construing 5 U.S.C. § 703), and this usage is plainly what is intended here. The reference occurs in a section juxtaposed with one calling for direct review in the court of appeals; and in context the provision assumes that the court of competent jurisdiction will adjudicate factual disputes when the FDIC has not established procedures for doing so.

Against this background, we think that in section 1821(f) Congress deliberately set forth two alternative methods of resolving deposit and insurance claims, and made the course to be followed depend on whether the FDIC has established regulations for the adjudication of such claims. If it has, the agency decides the factual disputes and there is direct court of appeals review; if it has not, then the agency's less formal resolution is subject to scrutiny in an action brought in a trial court of competent jurisdiction, which will normally be the federal district court.[2]

True, the statute's language is not airtight. The direct route to the court of appeals is available, as the statute phrases the matter, when there is a "[f]inal determination" by the FDIC. In the abstract, the quoted phrase could refer either to a determination made under FDIC regulations as provided in section 1821(f)(3)(A) or could include far less formal resolutions, such as the letter at issue in this case. But, in context, the latter is

---

1. *Kershaw v. RTC,* 987 F.2d 1206 (5th Cir.1993); *Nimon v. RTC,* 975 F.2d 240 (5th Cir.1992); *Abrams v. FDIC,* 938 F.2d 22 (2d Cir.1991). The FDIC cites us to unpublished orders of the Third and Fourth Circuits that appear to coincide with *Callejo* 's approach so *Callejo* may represent the "majority" view.

2. The district courts have original jurisdiction of such actions without reference to amount in controversy, 12 U.S.C. § 1819(b)(2)(A), and the FDIC would almost certainly remove any such action brought in a state court. *Id.* § 1819(b)(2)(B). Strictly speaking, section 1819(b)(2)(A) does not confer jurisdiction; it simply recognizes that there are courts of general jurisdiction able to entertain such claims.

surely a less plausible reading of the words; and it becomes even less plausible when history and function are considered.

The tradition of judicial review of official action is complex enough that few statements about it can be made without qualification. Still, broadly speaking, two different avenues for judicial review have existed in the federal courts: one involves an original action in the district court to enjoin unlawful official action, especially where no other means is provided; the other, used with increasing frequency where an agency has authority to resolve factual disputes in the first instance, is to empower the court of appeals to review the agency directly. *See generally* Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals*, 88 Harv.L.Rev. 980 (1975).

Because of the crisis out of which its present powers have emerged, the FDIC and its companion, the Resolution Trust Corporation, have enjoyed a succession of statutory favors relating to their powers, procedures and limitations on judicial intervention. As a part of this mosaic, it is not at all surprising that Congress would empower the FDIC to make the initial choice whether to adjudicate claims itself or insist that this task be performed by the courts. In the former case the FDIC would have to expend additional resources but in return it would be more likely to enjoy a greater degree of deference in its resolution of issues. 5 U.S.C. §§ 706(2)(A), (E).

Thus, in constructing section 1821(f) Congress has simply borrowed from two different traditions of judicial review, indeed, the two dominant traditions. It has authorized one to be used if the agency configures its own procedures to conform to the model of formal agency adjudication; it has provided for the other to be used if the agency chooses not to do so but, by some less formal means, makes clear its unwillingness to pay. The puzzle fits together quite neatly. Nor is it unprecedented for Congress to deploy both methods for a single agency. *See* Note, *supra*, 88 Harv.L.Rev. at 981 & n. 11.

The final reason for resolving any doubts in favor of the D.C. Circuit's approach is functional. Under *Callejo*, the court of appeals is the court of first instance where the agency has in place a procedure to resolve any disputed facts. Alternatively, the district court—which has the capacity for making fact findings as a matter of course—is the court of first instance where the agency has declined to establish an adjudicatory procedure. This is not only a rational plan, but one that corresponds exactly to the bifurcation in the statutory language.

Of course, one could make the choice of judicial forum turn on whether in a particular case there were factual disputes still to be resolved. But this is a call that can often be made only *during* the process of judicial review. Rules to determine which court has jurisdiction ought to be clear and easily applied at the outset. In any event, everything in the statutory language leans against *ad hoc* choices: what matters under the statute is whether the FDIC has adopted (and presumably used) regulations for adjudication.

In our own case it would probably be more efficient to resolve the merits in this court at once, because the merits issues appear to be entirely legal. But we are dealing with a jurisdictional statute adopted by Congress and intended to be observed uniformly. On a more practical level, experience teaches that in the end, a clear and simple schema for judicial review saves time for everyone. If this case had begun in the district court, we might now be deciding an appeal by one side or the other from summary judgment on the merits.

In sum, the statutory language of section 1821(f)—read in context—amply supports the D.C. Circuit's interpretation. If reading the statute in this fashion produced an odd or impractical outcome, one might search for other interpretations; but the bifurcation squares with the history of judicial review proceedings in federal courts, and the framework is eminently workable. The only quirk is the initial choice provided to the agency; but it is easily explained, by the banking crisis, and in any case was explicitly conferred by Congress.

■ The FDIC has tendered an alternative jurisdictional defense, namely, that section 1821(f) is entirely irrelevant—and there-

fore cannot confer jurisdiction on the courts of appeals—because Massachusetts' claims raise a broad legal issue and are thus not claims for insurance benefits. The Commonwealth's claims, however, were explicitly for deposit insurance benefits. A claim for such insurance benefits does not cease to be so because of the substantive issue raised by the specific claim or the number of claims made.

Given that two circuits have read section 1821(f) to favor direct court of appeals review, no criticism can attach to the Commonwealth's choice in this case to begin proceedings in this court. To avoid any risk that the Commonwealth might be prejudiced by having to start a new law suit, we exercise our authority "in the interest of justice" to transfer this case to the district court instead of dismissing. *See* 28 U.S.C. § 1631; *Callejo,* 17 F.3d at 1501. The district court, of course, may require that the petition be reframed as a complaint and follow whatever procedural course it deems appropriate.

Similarly, all issues are open to the district court except the two specifically decided in this opinion. We have decided here only that the Commonwealth's claims are claims for insurance benefits and that federal-court jurisdiction over the FDIC's disposition of such claims lies in the district court rather than in the court of appeals. We have not considered whether the FDIC's determinations here are "final" to the extent required for judicial intervention or any other such question. Our purpose in saying this is not to inject new issues, but simply to make plain that we have decided only the two matters actually briefed and argued.

This case is *transferred* to the United States District Court for the District of Massachusetts.