UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

No. 94-1649

COMMONWEALTH OF MASSACHUSETTS,

Petitioner,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE FEDERAL DEPOSIT INSURANCE CORPORATION

Before

Cyr and Boudin, Circuit Judges,

and Keeton,* District Judge.

Thomas O. Bean, Assistant Attorney General, with whom Scott
Harshbarger, Attorney General, was on brief for petitioner.
Edward J. O'Meara, Counsel, with whom Ann S. Duross, Assistant
General Counsel, and Richard J. Osterman, Jr., Senior Counsel, were on
brief for respondent.

February 8, 1995

*Of the District of Massachusetts, sitting by designation.

BOUDIN, Circuit Judge. In the years 1990 through 1992,

the Federal Deposit Insurance Corporation was appointed

receiver for over 30 banks principally located or doing

business in Massachusetts. Massachusetts has an abandoned

property statute, Mass. Gen. L. ch. 200A, that arguably gave

Massachusetts title under state law to certain of the insured

deposits in these banks, based on the failure of the named

depositors to communicate with their banks over an extended

period. Some of these potential claims had matured prior to

the banks' failure; others occurred during the receivership.

In March 1994, Massachusetts wrote to the FDIC naming

the banks and asserting that the Commonwealth owned the

abandoned deposits and that the FDIC was obligated to pay

deposit insurance benefits on those accounts to

Massachusetts. An FDIC attorney responded in April 1994 with

a two-paragraph letter to the Commonwealth's lawyer

reiterating the FDIC's position that the "Massachusetts

abandoned property law is preempted by federal law provisions

which dictate the disposition of unclaimed deposits."

Treating this letter as a dispositive determination,

Massachusetts in June 1994 filed a petition in this court

seeking review of the FDIC's action.

The underlying dispute raises important questions

including interpretation of a federal statute--the Unclaimed

Deposits Amendments Act of 1993--which became law in June

-2- -2-

1993. 107 Stat. 220. The FDIC position on the merits is

that federal law preempts the Massachusetts abandoned

property statute as to abandoned deposits held by the FDIC as

receiver. But the FDIC urges us not to reach the merits and

instead to dismiss for lack of subject matter jurisdiction.

We do not reach the merits because we agree with the

FDIC's threshold defense that direct review of the FDIC's

action in this court is not authorized by statute and that

the matter must be resolved in the first instance in the

district court. The jurisdictional issue turns, by general

agreement, on 12 U.S.C. 1821(f), whose third and fourth

paragraphs read as follows:

(3) Resolution of disputes
(A) Resolution in accordance to corporation regulations
In the case of any disputed claim relating to
any insured deposit or any determination of
insurance coverage with respect to any deposit, the
Corporation [the FDIC] may resolve such disputed
claim in accordance with regulations prescribed by
the Corporation establishing procedures for
resolving such claims.

(B) Adjudication of claims
If the Corporation has not prescribed
regulations establishing procedures for resolving
disputed claims, the Corporation may require the
final determination of a court of competent
jurisdiction before paying any such claim.

(4) Review of Corporation's determination
Final determination made by the Corporation
shall be reviewable in accordance with chapter 7 of
Title 5 by the United States Court of Appeals for
the District of Columbia or the court of appeals
for the Federal judicial circuit where the
principal place of business of the depository
institution is located.

-3- -3-

It is common ground that the FDIC has chosen not to

adopt "regulations . . . establishing procedures for

resolving such claims" to insured deposits or insurance

coverage. In these circumstances, the D.C. Circuit held that

direct court of appeals review under section 1821(f)(4) is

not available and that such a dispute must first be resolved

in a court of general jurisdiction, normally the federal

district court. See Callejo v. RTC, 17 F.3d 1497 (D.C. Cir.

1994). Massachusetts, in response, relies upon decisions of

the Second and Fifth Circuits that read section 1821(f)(4) to

permit immediate court of appeals review.1

Our issue is thus one on which very able judges in

different circuits have reached opposite results in

construing a rather brief set of statutory provisions. There

is certainly some looseness in the language of section

1821(f); but in the end we agree with the D.C. Circuit that

language and policy alike favor the FDIC's position. Since

two other circuits disagree, we think it fitting to explain

our reasoning briefly instead of relying solely on a

reference to the excellent discussion in Callejo.



1Kershaw v. RTC, 987 F.2d 1206 (5th Cir. 1993); Nimon v.
RTC, 975 F.2d 240 (5th Cir. 1992); Abrams v. FDIC, 938 F.2d
22 (2d Cir. 1991). The FDIC cites us to unpublished orders
of the Third and Fourth Circuits that appear to coincide with
Callejo's approach so Callejo may represent the "majority"
view.

-4- -4-

In enacting section 1821(f), Congress explicitly gave

the FDIC two ways to resolve disputes about insured deposits

and insurance coverage of deposits. First, the FDIC can

resolve the disputes itself by adopting regulations for

resolving such claims. Section 1821(f)(3)(A). If it does

so, then under section 1821(f)(4) the dissatisfied claimant

can obtain direct court of appeals review of the FDIC's

"final determination" pursuant to the Administrative

Procedure Act, 5 U.S.C. 701-06. Second, if "the

Corporation has not prescribed regulations" for resolving

such claims, the FDIC "may require the final determination of

a court of competent jurisdiction before resolving such

claims." Section 1821(f)(3)(B).

The phrase "court of competent jurisdiction" assuredly

refers to a federal district court or, absent exclusivity or

removal, a state trial court. The phrase is often used in

this manner, e.g., Watkins v. Green, 548 F.2d 1142, 1143 (4th

Cir. 1977) (construing 5 U.S.C. 703), and this usage is

plainly what is intended here. The reference occurs in a

section juxtaposed with one calling for direct review in the

court of appeals; and in context the provision assumes that

the court of competent jurisdiction will adjudicate factual

disputes when the FDIC has not established procedures for

doing so.

-5- -5-

Against this background, we think that in section

1821(f) Congress deliberately set forth two alternative

methods of resolving deposit and insurance claims, and made

the course to be followed depend on whether the FDIC has

established regulations for the adjudication of such claims.

If it has, the agency decides the factual disputes and there

is direct court of appeals review; if it has not, then the

agency's less formal resolution is subject to scrutiny in an

action brought in a trial court of competent jurisdiction,

which will normally be the federal district court.2

True, the statute's language is not airtight. The

direct route to the court of appeals is available, as the

statute phrases the matter, when there is a "[f]inal

determination" by the FDIC. In the abstract, the quoted

phrase could refer either to a determination made under FDIC

regulations as provided in section 1821(f)(3)(A) or could

include far less formal resolutions, such as the letter at

issue in this case. But, in context, the latter is surely a

less plausible reading of the words; and it becomes even less

plausible when history and function are considered.



2The district courts have original jurisdiction of such
actions without reference to amount in controversy, 12 U.S.C.
1819(b)(2)(A), and the FDIC would almost certainly remove
any such action brought in a state court. Id. 
1819(b)(2)(B). Strictly speaking, section 1819(b)(2)(A) does
not confer jurisdiction; it simply recognizes that there are
courts of general jurisdiction able to entertain such claims.

-6- -6-

The tradition of judicial review of official action is

complex enough that few statements about it can be made

without qualification. Still, broadly speaking, two

different avenues for judicial review have existed in the

federal courts: one involves an original action in the

district court to enjoin unlawful official action, especially

where no other means is provided; the other, used with

increasing frequency where an agency has authority to resolve

factual disputes in the first instance, is to empower the

court of appeals to review the agency directly. See

generally Note, Jurisdiction to Review Federal Administrative

Action: District Court or Court of Appeals, 88 Harv. L. Rev.

980 (1975).

Because of the crisis out of which its present powers

have emerged, the FDIC and its companion, the Resolution

Trust Corporation, have enjoyed a succession of statutory

favors relating to their powers, procedures and limitations

on judicial intervention. As a part of this mosaic, it is

not at all surprising that Congress would empower the FDIC to

make the initial choice whether to adjudicate claims itself

or insist that this task be performed by the courts. In the

former case the FDIC would have to expend additional

resources but in return it would be more likely to enjoy a

greater degree of deference in its resolution of issues. 5

U.S.C. 706(2)(A), (E).

-7- -7-

Thus, in constructing section 1821(f) Congress has

simply borrowed from two different traditions of judicial

review, indeed, the two dominant traditions. It has

authorized one to be used if the agency configures its own

procedures to conform to the model of formal agency

adjudication; it has provided for the other to be used if the

agency chooses not to do so but, by some less formal means,

makes clear its unwillingness to pay. The puzzle fits

together quite neatly. Nor is it unprecedented for Congress

to deploy both methods for a single agency. See Note, supra,

88 Harv. L. Rev. at 981 & n.11.

The final reason for resolving any doubts in favor of

the D.C. Circuit's approach is functional. Under Callejo,

the court of appeals is the court of first instance where the

agency has in place a procedure to resolve any disputed

facts. Alternatively, the district court--which has the

capacity for making fact findings as a matter of course--is

the court of first instance where the agency has declined to

establish an adjudicatory procedure. This is not only a

rational plan, but one that corresponds exactly to the

bifurcation in the statutory language.

Of course, one could make the choice of judicial forum

turn on whether in a particular case there were factual

disputes still to be resolved. But this is a call that can

often be made only during the process of judicial review.

-8- -8-

Rules to determine which court has jurisdiction ought to be

clear and easily applied at the outset. In any event,

everything in the statutory language leans against ad hoc

choices: what matters under the statute is whether the FDIC

has adopted (and presumablyused) regulations foradjudication.

In our own case it would probably be more efficient to

resolve the merits in this court at once, because the merits

issues appear to be entirely legal. But we are dealing with

a jurisdictional statute adopted by Congress and intended to

be observed uniformly. On a more practical level, experience

teaches that in the end, a clear and simple schema for

judicial review saves time for everyone. If this case had

begun in the district court, we might now be deciding an

appeal by one side or the other from summary judgment on the

merits.

In sum, the statutory language of section 1821(f)--read

in context--amply supports the D.C. Circuit's interpretation.

If reading the statute in this fashion produced an odd or

impractical outcome, one might search for other

interpretations; but the bifurcation squares with the history

of judicial review proceedings in federal courts, and the

framework is eminently workable. The only quirk is the

initial choice provided to the agency; but it is easily

explained, by the banking crisis, and in any case was

explicitly conferred by Congress.

-9- -9-

The FDIC has tendered an alternative jurisdictional

defense, namely, that section 1821(f) is entirely irrelevant-

-and therefore cannot confer jurisdiction on the courts of

appeals--because Massachusetts' claims raise a broad legal

issue and are thus not claims for insurance benefits. The

Commonwealth's claims, however, were explicitly for deposit

insurance benefits. A claim for such insurance benefits does

not cease to be so because of the substantive issue raised by

the specific claim or the number of claims made.

Given that two circuits have read section 1821(f) to

favor direct court of appeals review, no criticism can attach

to the Commonwealth's choice in this case to begin

proceedings in this court. To avoid any risk that the

Commonwealth might be prejudiced by having to start a new law

suit, we exercise our authority "in the interest of justice"

to transfer this case to the district court instead of

dismissing. See 28 U.S.C. 1631; Callejo, 17 F.3d at 1501.

The district court, of course, may require that the petition

be reframed as a complaint and follow whatever procedural

course it deems appropriate.

Similarly, all issues are open to the district court

except the two specifically decided in this opinion. We have

decided here only that the Commonwealth's claims are claims

for insurance benefits and that federal-court jurisdiction

over the FDIC's disposition of such claims lies in the

-10- -10-

district court rather than in the court of appeals. We have

not considered whether the FDIC's determinations here are

"final" to the extent required for judicial intervention or

any other such question. Our purpose in saying this is not

to inject new issues, but simply to make plain that we have

decided only the two matters actually briefed and argued.

This case is transferred to the United States District

Court for the District of Massachusetts.

-11- -11-