**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

**No. 484, Docket 95–4078.**

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1995.

Decided March 14, 1996.

Stuart M. Bliwas, Assistant Counsel, Commonwealth of Pennsylvania, Department of Environmental Resources, Harrisburg, PA (Martin H. Sokolow, Jr., Assistant Counsel, Commonwealth of Pennsylvania, Department of Environmental Resources, Harrisburg, PA, on the brief), for petitioner.

Daniel G. Lonergan, Counsel, Federal Deposit Insurance Corporation, Washington, DC (Ann S. DuRoss, Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, Federal Deposit Insurance Corporation, Washington, DC, on the brief), for respondent.

Before: ALTIMARI and JACOBS, Circuit Judge, and CONNER,\* District Judge.

ALTIMARI, Circuit Judge:

Petitioner Department of Environmental Resources of the Commonwealth of Pennsylvania ("Pennsylvania" or "DER") petitions the Court pursuant to 12 U.S.C. § 1821(f)(4) for review of the denial by respondent Federal Deposit Insurance Corporation in its corporate capacity ("FDIC"), of DER's claim for insurance on an account maintained in a failed savings institution. Despite DER's petition, both parties insist that the Court lacks jurisdiction.

We agree with the parties that where, as here, FDIC has failed to establish procedures for resolving a dispute over a claim for deposit insurance, jurisdiction lies in the district court rather than the Court of Appeals. Accordingly, we overrule that portion of *Abrams v. FDIC,* 938 F.2d 22 (2d Cir.1991), a decision in which this author participated, which held otherwise. In the interest of justice, we transfer this case to the United States District Court for the District of Connecticut.

## BACKGROUND

In 1981, Stanley L. Grazis, Inc. ("Grazis") entered into oil and gas leases with the Commonwealth of Pennsylvania which required Grazis to provide collateral in the amount of $100,000. Accordingly, Grazis opened an account with the First Constitution Bank of New Haven, Connecticut ("First Constitution" or the "Bank") on October 23, 1989, in the amount of $100,000; First Constitution issued Grazis a certificate of deposit ("CD") in the amount of $100,000.

Shortly after obtaining the CD, Grazis executed a written "Assignment of Bank Investment Certificate As Surety For State Oil and Gas Leases" which conveyed the CD to DER "to secure the faithful performance of the conditions and requirements of [the oil and gas] Leases." First Constitution consented to the conveyance in writing. On October 23, 1990, the CD matured. When the CD matured, Pennsylvania made no effort to indicate to the Bank what should be done with the account. Rather, on June 23, 1992, nearly two years after maturity, Grazis withdrew the money in the account and opened two new accounts, both in the name Stanley L. Grazis, Inc.

---

\* The Honorable William C. Conner, United States District Judge for the Southern District of New York, sitting by designation.

Some three months later, First Constitution failed; FDIC was appointed receiver on October 2, 1992. At the time of the Bank's failure the account records showed two $50,000 CD accounts belonging to Grazis. Because the original CD account was extinguished on June 23, 1992, there was no record of any third-party interest in Grazis's accounts.

Meanwhile, Grazis was out of compliance with the requirements of its oil and gas leases. DER originally agreed to extend the time provided for Grazis to do certain work to achieve compliance. By August 1994, however, DER notified Grazis that, as a result of its failure to comply, DER intended to effect the forfeiture of the $100,000 CD. At the same time, DER attempted to notify First Constitution of the forfeiture action. When its first letter went unanswered, DER sent a second "Demand for Payment" to First Constitution, seeking $100,000 "plus accrued interest from August 24, 1994," the date of the declaration of forfeiture. Ultimately, First Constitution's successor advised Pennsylvania of the Bank's failure and forwarded DER's demands to FDIC.

On October 14, 1994, DER filed a formal claim with FDIC, seeking insurance coverage for the $100,000 certificate account, pursuant to 12 U.S.C. § 1821(a)(1) (providing that FDIC will insure deposits of covered institutions). DER argued that it was entitled to insurance coverage under the plain language of the statute because a certificate of deposit was a covered instrument.

On March 30, 1995, FDIC allowed Pennsylvania's claim against FDIC in its capacity as receiver, and issued a Receivership Certificate in the amount of $100,000. However, FDIC denied Pennsylvania's insurance claim against FDIC in its corporate capacity, on the ground that DER's own written demands made clear that Pennsylvania had no ownership interest on October 2, 1992, the date on which FDIC was appointed receiver. DER now petitions this Court for review of this decision.

On appeal, both parties urge us not to reach the substance of FDIC's ruling, namely that DER had no insurable interest in any account at the pertinent time. Restating its previously unsuccessful arguments before an earlier panel of this Court, FDIC insists that Congress intended that original jurisdiction in a case such as this is properly vested in the district court. Pennsylvania agrees, and both parties seek a "remand" to the district court.

## DISCUSSION

In *Abrams v. FDIC*, 938 F.2d 22, 25 (2d Cir.1991), this Court held, in a case of first impression, that it had subject matter jurisdiction to review final action of the FDIC with respect to disputed claims for insurance coverage. We rejected FDIC's argument that, in some disputed coverage cases, jurisdiction properly lies in the district courts. In *Abrams,* as here, the FDIC argued that "Congress intended that deposit insurance claims ... be heard by the district court in the first instance." We concluded that the statutory framework was unambiguous: "Once the FDIC finally resolves a claim ... the courts of appeals are empowered by section 1821(f)(4) to review the FDIC's determination." 938 F.2d at 25. With the exception of the Fifth Circuit, those courts of appeals that have since considered the question have disagreed with our assertion of jurisdiction in *Abrams. See Schep v. Resolution Trust Corp.,* 53 F.3d 1085, 1085 (9th Cir.1995); *Massachusetts v. FDIC,* 47 F.3d 456, 458 (1st Cir.1995) ("*Massachusetts*"); *Callejo v. Resolution Trust Corp.,* 17 F.3d 1497, 1500 (D.C.Cir.1994). *Contra Kershaw v. Resolution Trust Corp.,* 987 F.2d 1206, 1208 (5th Cir.1993); *Nimon v. Resolution Trust Corp.,* 975 F.2d 240, 244 (5th Cir.1992); *see also DeCell & Assocs. v. FDIC,* 36 F.3d 464, 469 (5th Cir.1994) (holding, in the alternative, that jurisdiction lies in courts of appeal), *cert. denied,* —— U.S. ——, 115 S.Ct. 2275, 132 L.Ed.2d 279 (1995).

Section 1821(f) of Title 12 of the United States Code provides in pertinent part:

(3) Resolution of disputes

  (A) Resolutions in accordance with Corporation regulations

    In the case of any disputed claim relating to any insured deposit or any determination of insurance coverage

with respect to any deposit, the Corporation may resolve such disputed claim *in accordance with regulations prescribed by the Corporation establishing procedures for resolving such claims.*

(B) Adjudication of claims

*If the Corporation has not prescribed regulations establishing procedures for resolving disputed claims,* the Corporation may require the final determination of a court of competent jurisdiction before paying any such claim.

(4) Review of corporation's determination

Final determination made by the Corporation shall be reviewable in accordance with chapter 7 of Title 5 by the United States Court of Appeals for the District of Columbia or the court of appeals for the Federal judicial circuit where the principal place of business of the depository institution is located.

12 U.S.C. § 1821(f)(3)–(4) (emphases added).

Interpreting the meaning of § 1821(f), the Court of Appeals for the District of Columbia concluded that where FDIC had not established procedures governing a particular dispute, original jurisdiction was in the district court. *See Callejo,* 17 F.3d at 1500. The court further held that the district court proceeding was to be conducted *de novo,* rather than under the deferential standard used to review administrative action pursuant to the Administrative Procedure Act ("APA"). *See id.* at 1500–01. In the words of that court,

As we read section 1821(f), Congress gave the FDIC a choice of two alternatives. If it is willing to prescribe regulations setting up adjudicative procedures, the Corporation can go ahead and finally "resolve" disputed claims for insurance coverage, and review of its resolutions will proceed in the courts of appeals under the deferential standards of the APA. This path, of course, has its administrative costs: not only would the Corporation have to promulgate regulations that would provide ad-

judicative procedures, but it also would have to create a record adequate for review in the courts of appeals. Neither the FDIC nor the RTC has selected this route. But as a result of their choice, neither Corporation is empowered to "resolve" disputed claims within the meaning of the statute. The Corporation can, of course, simply pay the sum demanded by a depositor, in which case no litigation would result. It can also refuse to pay a claim. But section 1821(f) plainly contemplates a distinction between "determinations" of this sort and *"final* determinations" subject to deferential review in the court of appeals. Under paragraph (3)(A), if the Corporation's (initial) "determination" generates a dispute, then the Corporation may "resolve" the dispute and produce a "final determination"—but *only* if it has adopted regulations establishing procedures for doing so. In the absence of such procedures, the Corporation's refusal to pay is not a "final determination" of a disputed claim within the meaning of section 1821(f)(4), and so its decision can give rise only to an original action in district court.

*Id.* at 1499.

The D.C. Circuit declined to follow *Abrams* in part because of its remedy: In *Abrams,* we remanded the case to FDIC, so that the agency could provide "a full, written explanation" of its action. 938 F.2d at 25–26. The *Callejo* court rejected this "third option" because it frustrated what that court understood to be Congress's desire to permit FDIC to forego the formulation of adjudicatory proceedings. *See Callejo,* 17 F.3d at 1500. We now hold, for the reasons stated by the Court of Appeals for the District of Columbia, that we lack jurisdiction to hear this appeal.[1] *See Callejo,* 17 F.3d at 1499–1501. The *Callejo* court divined a more sensible purpose to the statute than was evident to us in *Abrams.*

We note, however, that we neither adopt nor reject the additional holding of *Callejo,* that the district court is to conduct a *de novo* trial rather than apply the deferential standard of the APA. *Compare Callejo,* 17 F.3d at 1500–01 & n. 3 (*de novo*) with *Nimon,* 975

---

1. *This opinion was circulated among all active members of this Court prior to filing, as well as to Judge Oakes, the author of the Abrams opin-* ion, now overruled. No judge has objected to its filing.

F.2d at 244 (abuse of discretion) *and In re Collins Securities Corp.,* 998 F.2d 551, 553 (8th Cir.1993) (abuse of discretion) *and Villa-fane–Neriz v. FDIC,* 75 F.3d 727, 730 (1st Cir.1996) (not yet necessary to decide standard, which *Massachusetts* left open). *See also Pennsylvania v. FDIC,* 881 F.Supp. 979, 983 (E.D.Pa.1995) (concluding that hearing in district court is *de novo* "because the APA is inapplicable to determinations that FDIC as insurer makes pursuant to § 1821(f)"). Because the parties did not have an opportunity to thoroughly brief and argue the question, we think it the more prudent course to leave the question for another day.

## CONCLUSION

We now overrule that portion of *Abrams,* 938 F.2d 22, 25 (2d Cir.1991), holding that jurisdiction lies in this Court even though FDIC had promulgated no regulations to resolve the underlying coverage dispute. Because FDIC had no formal adjudicatory procedures for resolving DER's dispute, jurisdiction properly lies in the district court. To avoid any statute of limitations problems that might now exist, we transfer this case "in the interest of justice" to the United States District Court for the District of Connecticut. *See* 28 U.S.C. § 1631 (permitting transfer of civil actions by court that lacks jurisdiction); *Schep,* 53 F.3d at 1085; *Callejo,* 17 F.3d at 1501.